MILFORD WATER COMPANY *vs.* INHABITANTS OF HOPKINTON.

Middlesex.    December 14, 1905. — July 5, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Tax*, Exemption, Abatement. *Corporation. Public Service Corporation. Estoppel. Milford Water Company. Hopkinton.*

If a public service corporation, incorporated for the purpose of supplying the inhabitants of a certain town with water and given by statute authority to take and hold land in another town for the purposes named in its charter, acquires for these purposes either by purchase or by a taking under the authorizing statute land which it has the right to take under the statute, such land so far as it is necessary and proper for the purposes of the charter of the corporation is exempt from taxation.

The Milford Water Company, incorporated by St. 1881, c. 77, for the purpose of furnishing the inhabitants of Milford with water, and authorized by St. 1882, c. 188, to take and hold any real estate south of a certain street in the town of Hopkinton necessary and proper for the purpose of supplying the town of Milford with water, acquired by a taking under the act, or in part by purchase .ratified by a subsequent taking, land in Hopkinton south of the street named in the act, and constructed thereon a dam and reservoir which it held and used for the purposes of its charter. *Held,* that the real estate of the water company thus acquired and used was not subject to taxation by the town of Hopkinton.

A public service corporation may maintain a petition under R. L. c. 12, § 73, for the abatement of a tax assessed upon land held by it under statutory authority for a public purpose and thus exempt from taxation, although the result of granting the petition will be to abate the whole of the tax.

A public service corporation is not estopped from maintaining a petition under R. L. c. 12, § 73, for the abatement of a tax assessed upon land held by it for a public purpose and thus exempt from taxation by the fact that it included the land in the list of taxable property which it returned to the assessors.

PETITION, filed December 5, 1904, under R. L. c. 12, § 73, for an abatement of certain taxes assessed upon the property of the petitioner in the town of Hopkinton for the year 1904.

On appeal from a refusal of the abatement by the assessors, the case was tried in the Superior Court before *Hardy*, J.  It appeared that all the preliminary statutory requirements to entitle the petitioner to an abatement had been complied with.

The petitioner was incorporated by St. 1881, c. 77, " for the purpose of furnishing the inhabitants of Milford with pure water for the extinguishment of fires, and for domestic and other purposes, with all the powers and privileges, and subject to all the duties, restrictions and liabilities set forth in the general laws which now are or may hereafter be in force regulating such corporations." .

Section 2 of the act authorized the petitioner to take and hold water from any streams and springs in Milford, and to construct dams and lay water pipes, and to take and hold real estate for the preservation and purity of its water supply in Milford, and do the other acts necessary for the establishment of a municipal water supply.

Section 9 of the act is as follows :

" The town of Milford shall have the right at any time during the continuance of the charter hereby granted, to purchase the corporate property and all the rights and privileges of said company, at a price which may be mutually agreed upon between said corporation and the said town of Milford; and the said corporation is authorized to make sale of the same to said town.  In case said corporation and said town are unable to agree, then the compensation to be paid shall be determined by three commissioners, to be appointed by the supreme judicial court upon application of either party and notice to the other, whose award, when accepted by said court, shall be binding upon both parties.  And this authority to purchase said franchise and property is granted on condition that the same is assented to by said town by a two-thirds vote of the voters present and voting thereon, at a meeting called for that purpose."

The first two sections of St. 1882, c. 188, are as follows :

" Section 1.  The Milford Water Company may take and hold any real estate situated south of Granite Street in the town of Hopkinton, necessary and proper for the purpose of supplying the town of Milford with water, as provided by chapter seventy-seven of the acts of the year eighteen hundred and eighty-one,

and for the preservation and purification of such water and for forming any dams or reservoirs to hold the same.

"Section 2.   Said corporation shall, within sixty days after the taking of any land under the provisions of this act, file and cause to be recorded in the registry of deeds for the southern district of the county of Middlesex a description of the land so taken, sufficiently accurate for identification, and stating the purposes for which it is taken; and the title of the land so taken shall vest in said corporation.   Any person whose property is injured in any way by any act of said corporation, and who fails to agree with said corporation as to the amount of damages, may have the same assessed and determined in the manner provided when land is taken for a highway.   Any person whose land is thus taken or affected may apply as aforesaid within three years from the time the land is actually taken, and not thereafter; and no suit for injury done under this act shall be brought after three years from the date of the alleged injury."

In 1882 the petitioner built a dam and reservoir in the town of Hopkinton, from which water flowed in the natural channel of the stream to a point in Milford, where from a pumping station water was taken into the mains of the petitioner and distributed to the consumers.   In 1901 the dam was raised ten feet, flowing a much larger area.   All the land thus used and occupied by the petitioner in the town of Hopkinton, whether previously acquired by deed or not, was included by the petitioner on May 1, 1904, in a taking under the authority of eminent domain conferred upon it by the two statutes above named, its ownership on that date being one hundred and fifty-eight and four-tenths acres.

The judge found and ruled as follows:

"The fair cash value of the dam on May 1, 1904, was twelve thousand dollars.

"The remaining land of the petitioner in Hopkinton was one hundred and fifty-eight and four-tenths acres in area and the value of such land apart from the dam if it had not been devoted to the uses of the water supply, was at that date, thirty dollars an acre.

"I find, however, the cash value of the latter parcel of land in connection with its use for a water supply has been enhanced

by reason of the purposes for such water supply to which it has been devoted, and for which it is necessary under the limitations and provisions of the statute, to the amount of seventy-five dollars an acre. In accordance with such finding the value of the land and dam was twenty-three thousand eight hundred and eighty dollars.

" Inasmuch as the petitioner admitted in its schedule returned to the respondent that the area of the land was one hundred and seventy-five acres and both parties acted on a mutual understanding as to such admission and because of the pleadings in the case, I find the petitioner is not entitled to an abatement by reason of the error as to the area of the land assessed.

"I rule that such enhanced value created by the uses for a water supply is incident to the land herein assessed. I therefore find that the valuation of the assessors of the respondent is reasonable and the prayer of the petitioner is denied, with costs."

The petitioner alleged exceptions, raising the questions which are dealt with in the opinion.

*A. P. Rugg,* (*W. Williams* with him,) for the petitioner.

*C. F. Choate, Jr.,* (*F. C. Pillion* with him,) for the respondent.

HAMMOND, J. The principal question is whether the real estate is exempt from taxation. The petitioner does not base the claim of exemption upon any express provision of statute, nor does it deny the power of the Legislature to tax the property. But it contends that the general provisions of our statutes for the taxation of real estate are not applicable where the estate is taken by right of eminent domain, (or, being subject to be so taken, has been purchased,) for a public purpose and is being used for that purpose.

The leading case upon this subject in our reports is *Worcester* v. *Western Railroad,* 4 Met. 564. The railroad company had been authorized to take a strip of land five rods wide, (and, in certain cases not here material, to a greater width,) and to purchase such land outside of said strip as might be proper and necessary in carrying on the business for which it was incorporated. It was said by this court that it was manifest upon an inspection of the charter that "the establishment of that great thoroughfare is regarded as a public work, estab-

lished by public authority, intended for the public use and benefit," and it was held that to the extent of the land which the corporation could take by right of eminent domain the real estate of the corporation was exempt from taxation so long as used for the public purpose. It was further held that this was the limit of exemption. The rule thus laid down was approved in *Boston & Maine Railroad* v. *Cambridge*, 8 Cush. 237. In *Wayland* v. *County Commissioners*, 4 Gray, 500, the same principle was applied where land situated in the town of Wayland had been taken by the city of Boston under St. 1846, c. 167, for supplying the city with pure water. Thomas, J., in giving the opinion of the court, says: " We think the question substantially settled by the decision of this court in the case of *Worcester* v. *Western Railroad*."

The principle seems to be that where land is taken (or purchased when it could have been taken) and held for a public purpose, it shall be exempt from taxation in the absence of any express statutory provision to the contrary. It has been applied to a gravel pit owned by one city within the limits of another, and to land taken for highways. *Somerville* v. *Waltham*, 170 Mass. 160. *Lancy* v. *Boston*, 186 Mass. 128, and cases cited. *Boston* v. *Boston & Albany Railroad*, 170 Mass. 95, and cases cited. In the case last cited Knowlton, J. said : " But the exemption of property appropriated to a public use is not founded upon an express provision of any statute, but rests upon general principles of propriety, justice, and expediency, which are applicable alike to every kind of taxation."

The petitioner, the Milford Water Company, was incorporated " for the purpose of furnishing the inhabitants of Milford with pure water for the extinguishment of fires, and for domestic and other purposes "; and to that end was authorized to take, hold and convey the water of any spring or stream in Milford, and to take and hold by purchase or otherwise any land in the town of Milford or in the town of Hopkinton south of Granite Street which might be proper and necessary. There was a provision in the act of incorporation providing that the town of Milford should have the right to purchase the corporate property, the price to be agreed upon by the parties or, failing an agreement, by three commissioners. St. 1881, c. 77. St. 1882, c. 188.

The use is public. As said by Thomas, J. in *Wayland* v. *County Commissioners, ubi supra,* "It would be difficult . . . to find any class of cases in which the right of eminent domain is more justly or wisely exercised than in provisions to supply our crowded towns and cities with pure water, provisions equally necessary to the health and the safety of the people." The petitioner was engaged' in ministering to this use, and for this purpose it was empowered to take land by right of eminent domain. It could take land for no other purpose. We do not understand the respondent town to deny that the real estate in question was held and used by the petitioner under its act of incorporation. If the estate had been held by the town of Milford, then the case would have been completely covered by the last case above cited.

It is true that by St. 1893, c. 352, (now R. L. c. 12, § 10,) it was provided in substance that although property held by a city or town in another city or town for the purpose of a water supply, if yielding no rent, should be exempt from taxation, yet that the city or town so holding should pay to the city or town in which the land was situated a certain sum dependent upon the value of the land exclusive of buildings or other structures; yet it is manifest that this sum is not technically a tax, but simply a substitute for a tax. The principle of the decision in *Wayland* v. *County Commissioners, ubi supra,* is still the law of the Commonwealth so far as respects the question of taxation.

It can make no difference that the party which is empowered to exercise the right of eminent domain and to perform this public trust is a corporation other than municipal. The true test is whether it is engaged in the administration of a public trust with power to take land for that purpose. It is the character of the use to which the property is put, and not of the party who uses it, that settles the question of exemption from taxation. *Worcester* v. *Western Railroad, ubi supra. Wayland* v. *County Commissioners, ubi supra. Boston* v. *Boston & Albany Railroad,* 170 Mass. 95. *Essex County* v. *Salem,* 153 Mass. 141. The case is clearly distinguishable from cases like *Boston Water Power Co.* v. *Boston,* 9 Met. 199, and *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75. In the latter case Bigelow, C. J.,

in speaking of the contention that the defendant was a quasi public corporation like a turnpike or a railroad corporation, uses this language: " We fail to see that the defendants can be properly regarded as a corporation of this character. No public duty is imposed upon them, nor are they charged with any public trust. They are authorized to make and distribute gas for their own profit and gain only. They are not bound to sell and dispose of it to any one, either for public or private use or consumption. . . . Nor is any power conferred upon them to take private property, not previously appropriated to a public use, for the purpose of exercising and enjoying their franchise."

The petitioner in this case is making a public use of property obtained by right of eminent domain. It cannot unreasonably refuse to furnish water to an applicant. *Turner* v. *Revere Water Co.* 171 Mass. 329. It is administering a public trust just as the town of Milford would be administering the same trust, should it exercise its right to purchase the property. There is no express statute subjecting land so used to taxation. Under the principles laid down in the cases hereinbefore cited, the provisions of the general tax acts do not apply. The land is therefore exempt from taxation, and that is so even if some or all of the land was acquired by purchase. It is not material whether the land be taken under statutory proceedings. If it could have been so taken, and by an agreement between the corporation and the landowner these proceedings are dispensed with and the title is conveyed by deed to the corporation, the land so far as material to the question before us is to be regarded as if taken by right of eminent domain. It is true that under this decision the petitioner is left in a more favorable position as to taxation than that in which a town using land for a similar purpose is left under R. L. c. 12, § 10, and more favorable also than that of an aqueduct company, incorporated under the general laws, which cannot take property by right of eminent domain. If this rule of law affects the public interests unfavorably the Legislature can provide a remedy.

It is argued by the respondent that the question whether the property is exempt is not open upon this petition. The petition is plainly brought under R. L. c. 12, § 73. This section provides that the assessors, if they find that the applicant for

abatement is taxed " at more than his just proportion, or·upon an assessment of any of his property in excess of its fair cash value," may make a reasonable abatement.   While it is true that the language of this section gives some support to the idea that the assessors acting under it cannot wholly abate a tax, and while the person taxed, upon paying the tax under protest, may maintain an action of contract to recover it back, or perhaps successfully defend against any proceedings brought for its collection, (see *Harrington* v. *Glidden,* 179 Mass. 486, and cases therein cited,) still we see no reason why the statute may not be broad enough to cover a case like this.   There are obvious public reasons why it is better that questions like this should be settled by the assessors upon petition for abatement, not the least potent of which is that the applicant for an abatement must first make to the assessors a sworn statement of his property liable to taxation.   Again, it is more convenient for the applicant that the question whether he is liable at all, and, if so, to what extent, should be settled in one proceeding.   In view of the history of the legislation we can have no doubt that it was the intention of the Legislature by this proceeding to make provision for the settlement of the question of the validity of the whole or any portion of the tax.   The petition follows the language of the statute, and is broad enough to justify any action proper under the statute.

It is further argued that by including in its list to the assessors this land as taxable property the petitioner is now estopped to set up the claim that it is not taxable.   But this position is untenable.   *Dunnell Manuf. Co.* v. *Pawtucket,* 7 Gray, 277. *Charlestown* v. *County Commissioners,* 109 Mass. 270.   *Moors* v. *Street Commissioners,* 134 Mass. 431.

It becomes unnecessary to discuss the other exceptions raised upon this record.

*Exceptions sustained.*