### Connecticut Valley Street Railway Company vs. City of Northampton.

Hampshire.    September 17, 1912. — October 18, 1912.

Present: Rugg, C. J., Morton, Hammond, Braley, & DeCourcy, JJ.

*Tax,* Exemption, Street railway. *Street Railway,* Local taxation. *Public Service Corporation. Statute,* Construction. *Words,* "Rights of way."

The principle, that land taken by a public service corporation by right of eminent domain, or land which such a corporation having the right to take by eminent domain has purchased, is exempt from taxation so long as it is used for the public purpose for which it was authorized to be taken, does not apply to land purchased by a street railway corporation for the purposes of its railway under authority of a statute giving it the right to acquire such land by purchase or lease but not the right to take it by eminent domain.

St. 1909, c. 439, § 1, relating to the taxation of poles and wires, which amends

R. L. c. 12, § 23, as amended by St. 1902, c. 342, excepts from taxation in the cities or towns in which they are erected or laid poles, wires and pipes erected or laid by "street railway companies, the value of whose poles, underground conduits and pipes, together with the wires thereon or therein, for the purpose of taxation, shall, like their rails and rights of way, be included in, and not deducted from, the value of their corporate franchises." *Held*, that the amending statute like the statute amended relates only to the taxation of personal property, that the "rights of way" referred to are merely the rights subject to municipal regulation to lay and use tracks in streets already appropriated to the uses of public travel, and that the statute exempts from local taxation no real estate of a street railway company on which it maintains its tracks.

PETITION, filed in the Superior Court on November 6, 1911, under St. 1909, c. 490, Part I, § 77, appealing from the refusal of the assessors of the city of Northampton to abate a tax assessed for the year 1911 on certain land and a portion of a bridge belonging to the petitioner upon which it maintained and operated its street railway.

The case was heard upon the pleadings and an agreed statement of facts by *Raymond*, J., who found for the respondent and reported the case for determination by this court.

*B. W. Warren*, (*C. R. Lamson* with him,) for the petitioner.

*J. W. Mason*, (*R. H. Cook* with him,) for the respondent.

HAMMOND, J.   This is a petition for the abatement of a tax laid by the assessors of the city of Northampton upon certain real estate owned in fee by the petitioner and situated within the territorial limits of the city.   The property consists of a lot of land and such portion of a bridge connected therewith as lies within the city.   The bridge crosses the Connecticut River, one end resting upon this land and the other upon land in the town of Hadley.   The land is a strip twenty-two and a half feet in width, extending from the bridge to the highway.   Upon the bridge and land the petitioner has constructed and maintains its rails, sleepers, poles, wires and appliances necessary for the operation of its street railway, and the sole use thereof is for such operation, the rails upon the land forming the connecting link between those on the bridge and those on the highway.   The question is whether this real estate is subject to local taxation.

The petitioner is a duly organized domestic street railway corporation owning and operating a street railway over a route of which this real estate is a part.   St. 1899, c. 293, authorized the petitioner under its then name of the Northampton and Amherst

Street Railway Company, to "construct . . . a bridge across the Connecticut River between the city of Northampton and the town of Hadley, at such a point as will enable it to connect its tracks on the locations granted or which may be hereafter granted to it by said city with the tracks on the locations granted or which may be hereafter granted to it by said town," and also to "construct and operate its railway on said bridge." And it was further authorized to "construct and operate its railway and electrical equipment in part upon such private land in the city of Northampton and in the towns of Hadley and Amherst as it may obtain by purchase or lease, subject to the approval and under the control of the board of aldermen of said city and the selectmen of said towns, respectively;" and further, to "acquire and hold, by purchase or lease, all real estate necessary . . . for the proper maintenance and operation of its railway." Under this authority the petitioner built the bridge, bought the land in fee and constructed its railway in part on each.

There can be no doubt that both bridge and land are real estate within the meaning of that term as used in our general tax laws (St. 1909, c. 490, Part I, § 3), and that in the absence of any law to the contrary they as such are subject to local taxation. The petitioner says, however, that there is a law to the contrary. It says that this property is exempt, first, because devoted to a public use; and second, because of the express language of St. 1909, c. 439, § 1.

1. It certainly is devoted to a public use. But is it for that reason alone exempt from local taxation? Generally speaking, property owned by the government, whether the ownership be in State, county, city or town, and exclusively used for public purposes, is presumed to be exempt from taxation. And this is so, even when the property is situated in another municipality within the State than the owner. Nothing but the clearly expressed will of the law-making power to the contrary will overcome this presumption. *Worcester County* v. *Worcester,* 116 Mass. 193. *Somerville* v. *Waltham,* 170 Mass. 160, and the cases therein respectively cited. It is to be noted, however, that the petitioner is not a governmental corporation. It is simply a private corporation doing business for profit; and hence this case is to be distinguished from those just cited.

The extent to which the real estate of a private corporation· which is devoted to public use is exempt from taxation, and the reasons upon which this exemption is based, have been considered by this court in several cases, among which are *Salem Iron Factory* v. *Danvers,* 10 Mass. 514; *Worcester* v. *Western Railroad,* 4 Met. 564; *Worcester* v. *Board of Appeal in Tax Matters,* 184 Mass. 460; and *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491. From these cases and the authorities therein respectively cited, it appears that in the early tax acts no mention is made of shares of corporation stock by name; that when first specially mentioned for taxation and for nearly a quarter of a century thereafter they were assessed according to their just value to the individual stockholders where domiciled; that, at least in some towns, the practice prevailed of assessing the property both real and personal of a corporation to it as the owner, thus subjecting some portion of the corporate property both real and personal to a kind of double taxation; that in *Salem Iron Factory* v. *Danvers, ubi supra,* it was adjudged that the personal property of a corporation was not assessable to it as owner, but that the real estate was so assessable in the place where situated; that with certain exceptions which, so far as material to this case, will be hereinafter noticed, this general system of the taxation of corporate property was continued until the passage of St. 1864, c. 208; that by that statute a change was made in the matter of taxation of certain corporations, the change consisting in relieving the stockholders from taxation and imposing upon the corporation a franchise tax depending upon the market value of all its shares less certain deductions among which is the value of the corporate estate subject to local taxation; and that such ever since has been a general feature of our system of taxation.

It further appears from these cases that early it was determined that certain real estate owned by public service corporations and exclusively devoted to public use was exempt from local taxation. The leading case upon this subject in our reports is *Worcester* v. *Western Railroad,* 4 Met. 564, in which it was held that the strip of land five rods wide which the defendant was authorized to take by right of eminent domain was, together with what was constructed upon or affixed to it, exempt from taxation as long as used for the public purpose for which the corporation was

chartered. It was further held that this was the limit of the exception. The rule as thus limited was approved in *Boston & Maine Railroad* v. *Cambridge*, 8 Cush. 237. See for other cases in which it has been applied, *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491, and cases cited. Only such land is exempt as the corporation has taken by right of eminent domain, or, having the right so to take, has purchased. In other words this right of exemption from taxation is coextensive with the right to take by eminent domain. Because of difference in the statutes not much assistance is to be got from consideration of decisions in other States, but for cases adopting a similar rule see *Milwaukee & St. Paul Railway* v. *Milwaukee*, 34 Wis. 271; *State* v. *Hancock*, 4 Vroom, 315. See also Cooley on Taxation, (3d ed.) 367, and cases therein cited. This exemption is not founded upon any express language of the tax acts, but upon judicial construction of them as dictated by considerations of justice and expediency. The rule was declared sixty years ago, and, although the method of taxing real estate of a corporation has been changed in many respects, no change has been made in this respect as to real estate owned by railroad and street railway companies (at least up to the time of St. 1909, c. 439, hereinafter considered). The Legislature has been content with this interpretation of the tax acts. It is clear that the petitioner did not acquire title to the real estate in question by right of eminent domain, nor could it have so acquired it. This general principle of implied exemption upon which the petitioner relies is therefore not applicable; and the case so far as it rests upon that ground fails.

2. The petitioner, however, further contends that the property is expressly exempted from local taxation by St. 1909, c. 439, § 1, which so far as material reads as follows: "Tenth, Underground conduits, wires and pipes laid in public streets, and poles, underground conduits and pipes, together with the wires thereon or therein, laid in or erected upon private property, or in a railroad location by any corporation, except street railway companies, the value of whose poles, underground conduits and pipes, together with the wires thereon or therein, for the purpose of taxation, shall, like their rails and rights of way, be included in, and not deducted from, the value of their corporate franchises ascertained as provided by section one hundred and twenty-six of

Part III of chapter four hundred and sixty-three of the acts of the year nineteen hundred and six, and excepting also such poles, underground conduits, wires and pipes of a railroad corporation laid in the location of said railroad, shall be assessed to the owners thereof in the cities or towns in which they are laid or erected." Shortly stated, the contention of the petitioner on this branch of the case is that by the fair interpretation of the statute all rights of way of street railway corporations are exempt from local taxation, and that this bridge and land are included in that term.

In considering this statute it is well to look at the legislation leading to it, and also at the state of the law at the time it was passed as to the right of street railway companies to acquire rights of way and real estate.

Under the Revised Laws, the real estate and machinery of a corporation like the petitioner was subject to local taxation, and the value of such property was one of the items to be deducted from the market value of its shares in determining the "true value of its corporate franchise" upon which the excise tax was to be laid. R. L. c. 12, §§ 3, 15, 23, cl. 2; c. 14, §§ 37, 38. See also the previous statutes leading to these provisions, namely, St. 1837, c. 86; Gen. Sts. c. 11, §§ 8, 12, cl. 2; Sts. 1864, c. 208; 1865, c. 283; Pub. Sts. c. 11, §§ 12, 20, cl. 2; c. 13, §§ 38, 39, 40. No assessment was laid for other property either upon the corporation itself or its stockholders, but instead thereof there was a tax upon the corporate franchise. See *Middlesex Railroad* v. *Charlestown,* 8 Allen, 330. St. 1902, c. 342, amending R. L. c. 12, § 23, provided that "underground conduits, wires and pipes laid in public streets by any corporation, except street railway companies, shall be assessed to the owners thereof in the cities or towns in which they are laid." It will be noticed that it applied only to the conduits laid in public streets and that street railway companies were exempt from its provisions. After the statute, the real estate (except so far as exempt upon the first ground hereinbefore discussed) and the machinery of such corporations still remained subject to local taxation, and all the other property was still free from it. Such was the state of the law as to the taxation of the property of street railway companies at the time St. 1909, c. 439, was enacted.

What at that time was the law as to the acquisition of private land or rights of way therein by such companies?  While from the first the right of taking land by right of eminent domain to the extent of five rods in width for the purpose of its charter seems to have been granted to a railroad company (see Sts. 1831, c. 72, § 1; 1833, c. 116, § 1; 1835, c. 148, § 3; Rev. Sts. c. 39, § 55), and while in several special charters of street railway companies (see for example Sts. 1860, c. 19, §§ 1, 13; 1861, c. 90, §§ 1, 16; c. 148, §§ 1, 14; 1892, c. 218, §§ 2, 3), a similar right has been granted, still the Legislature has been slow and cautious in granting by general laws any such right to the latter class of companies.  The reasons are obvious.  Such companies are chartered for the accommodation of "public travel in public ways," (see St. 1903, c. 476, § 1,) and they are expected to run the cars in the public streets, and only under exceptional circumstances are they expected to go elsewhere.

The first general statute upon this subject was St. 1898, c. 404, which authorized street railway companies to purchase or take by right of eminent domain under the conditions and in the manner therein prescribed, private land not exceeding five rods in width, "for the purpose of avoiding or eliminating a crossing of a railroad by its railway at grade."  St. 1901, c. 503, while authorizing such companies to construct and maintain a part of their road upon land leased or purchased, gave no right to take land by right of eminent domain.  St. 1903, c. 476, (re-enacted in St. 1906, c. 463, Part III, § 46,) however gave this right to take land to any such company "to enable it, in constructing its street railway or a branch or extension thereof, to avoid dangerous curves or grades existing in the highways, or for other similar purposes incident to and not inconsistent with its corporate franchise of operating a railway to accommodate public travel in public ways."  Such was the law, so far as here material, as to the right of street railway companies to acquire land by lease, or purchase, or by right of eminent domain.

Under this condition of the laws as to the taxation of the real estate and machinery of street railway companies, and also as to their right to acquire land, St. 1909, c. 439, was passed.  It is entitled "An Act relative to the taxation of poles for wires." It begins by saying that R. L. c. 12, § 23, as amended by St. 1902,

c. 342, § 1, shall be amended so as to read as thereinafter described (as hereinbefore quoted).  The changes as to underground conduits, etc., may be thus stated: Before this statute such property was subject to local taxation only when placed in or on public streets, and not even then when so placed by a street railway company.  The statute having first extended the liability to such property placed on private land or on a railroad location by any corporation, proceeds to state clearly that so far as respects such property owned by street railway companies the law remains as before.  In this connection it uses the following language: "... by any corporation, except street railway companies, the value of whose poles, underground conduits and pipes, together with the wires thereon or therein, for the purpose of taxation, shall, like their rails and rights of way, be included in, and not deducted from, the value of their corporate franchises."

The section of the Revised Laws (c. 12, § 23) to which this amendment applies deals exclusively with the taxation of personal estate.  After laying down the general rule that all such estate shall be assessed to the owner in the place of his residence, it proceeds to state nine exceptions to this general rule.  St. 1902, c. 342, simply amended the section by adding thereto a tenth exception which made underground conduits and the other articles therein specifically named subject to local taxation when laid in or erected upon public streets by any one other than street railway companies.  St. 1909, c. 439, § 1, being the statute upon which the petitioner relies, still further amended this same section of the Revised Laws.  It may be noted in passing that this last statute was not repealed by the general codifying law passed the same year.  See St. 1909, c. 490, Part IV, § 27.  In considering St. 1909, c. 439, § 1, it must be borne in mind that we are dealing with a statute amending a section of the Revised Laws which, as originally written and also as it stood after the amendment made by St. 1902, c. 342, provided only for the taxation of personal estate.  It had no reference to the taxation of real estate.  The most natural view of the statute, especially when the language of its title is considered, would be, in the absence of any express language calling for a different view, that the statute was dealing only with personal property.  Moreover the use of the word "like" in the phrase "like their rails and rights of way" seems to

indicate that the phrase was used as an illustration of the law existing at that time as to rails and rights of way, rather than as an intention to change that law. One would hardly expect to find in a statute purporting to be an amendment to a general statute dealing only with personal estate a clause changing a well established system of taxation of real estate, especially when the clause is begun with the word "like" and not by "and" or "together with," or some such plain and clear words.

But the clause is in the statute and must be given its true meaning and effect. What is its meaning? Does it mean, as suggested by the petitioner, that before the statute the real estate of street railway companies over which their roads were constructed and maintained was free from local taxation? Or, again, does it mean, as also suggested by the petitioner, not to state the law as it stood at that time, but, whatever the law may have been, to have laid down a rule for the future, in substance that the rails and rights of way should be free from local taxation and that in the term "rights of way" is included the private land over which the road is maintained?

The first of these interpretations cannot be adopted because such was not the law; and, except at least upon clear and conclusive evidence, we cannot assume that the Legislature did not know what was the law created by its previous statutes, or that, knowing the law, it had inadvertently nodded. The difficulty as to the second interpretation is as to what is meant by "rights of way." What is meant by this term? To begin with, it is plain that it does not include the rails. The statute makes a distinction between rails and rights of way. They are two different classes of property. At the time of the enactment of the statute street railway companies, under the conditions respectively named in the statutes, might lay and maintain their rails (1) in public streets, (2) over private land the easement in which for that purpose could be acquired only by purchase or lease and had been so acquired, and (3) over private land taken by right of eminent domain or purchased when such right to take existed. Under certain circumstances a street railway company might with the permission of public authorities also construct and maintain its road upon land owned in fee by the company. But it is manifest that this right of a company to maintain its own road upon its

own land is not properly a right of way, as distinguished from the ownership in fee, or in other words is not an easement, but is simply one of the uses to which the owner as such may put his land.   And this is so notwithstanding the fact that in order to make such use of the land owned by it the consent of certain public authorities must be first obtained.   The object of such provisions in the case where the land is owned by the company is not to protect the landowner from an invasion of his property, but to see to it that the company duly preserves its character as a public carrier to accommodate the public travel in public ways.

There is a marked difference between the rights acquired by a street railway company by a location in a public street, being the first right above named, and that acquired by a location over private land, being the second and third rights above named.   In the last two the right constitutes an easement in the real estate; and although it is technically only an easement, yet, speaking generally, it requires for its enjoyment a use of the land permanent in its nature and practically exclusive.   *Hazen* v. *Boston & Maine Railroad,* 2 Gray, 574, 580.   (See for the application of our system of taxation to such easements and the land which is subject to them, *Boston* v. *Boston & Albany Railroad,* 170 Mass. 95, and *Lancy* v. *Boston,* 186 Mass. 128.)   Such an easement is an interest in real estate and is not personal estate.

The right acquired by a location in a public street is entirely different.   It is no private interest in the land over which the street is located.   The right granted is simply to lay down the rails and to run cars over them subject to change and even to revocation on the part of the public authorities.   It is no new easement over the land.   As said by Colt, J., in *Attorney General* v. *Metropolitan Railroad,* 125 Mass. 515, 517, 518: "The franchise granted to a street railway corporation is not the grant of a right to appropriate without compensation an additional easement in the soil of the street.   Nor can such use of the streets, under proper restrictions, be considered as the imposition of an additional servitude upon the land of the owner.   The peculiar privilege is the right, not to acquire land, or an easement in land, but only the right, so long as permitted by certain municipal authorities, to lay tracks in streets already appropriated to the uses of public travel, for the purpose of facilitating such travel;

to modify the public use, and change, to some extent, the law of the road." In other words the company is permitted to be one of the travelling public in the public street, and to travel therein in the exercise not of any private right over the soil of the street, but simply as sharing in the public right. And it has no more easement in the street than the proprietor of a licensed omnibus or the owner of an automobile, or the ordinary pedestrian. *Lorain Steel Co.* v. *Norfolk & Bristol Street Railway*, 187 Mass. 500. Such a right is not real estate nor any private right therein. So far as it is a property right at all it is simply personal property. Its value is peculiarly an item to be considered in the value of the corporate franchise upon which the excise tax is assessed.

And while there are many instances where street railway tracks are legally located and maintained on private land, still it nevertheless is true that the purpose for which street railway companies are chartered is to accommodate the public travel in public ways, that the right to construct and maintain tracks in private lands is merely incidental to this purpose, and in no way considerable as compared with the right to maintain tracks in the streets, that the right in the streets is simply personal estate, and moreover that this right is the one fundamental right upon which the street railway company must rely to transact the business for which it was chartered.

Rails are personal property and as such were not liable to local taxation at the time the statute was passed. *Middlesex Railroad* v. *Charlestown*, 8 Allen, 330. We have then a statute before us for interpretation which is intended as an amendment to a general statute which treats only of personal property. Every article specifically named in it is clearly personal estate except the "rights of way." If that term be interpreted to mean simply rights of way essential to and characteristic of the business of a street railway company, all is in harmony with the interpretation suggested by the apparent general scope of the act and by the setting in which the phrase "rights of way" is placed.

In view of the state of the law at the time of the enactment of the statute, of the apparent scope of the act as indicated by its title, of the phrase in question as indicated by its setting, and of the other considerations hereinbefore mentioned, we are of opinion

that by the term "rights of way" as here used is intended such rights of way as a street railway company has in the public streets and no other.

*Petition dismissed.*