## DuBOIS v BAKER

Ohio Appeals, 1st Dist, Butler Co

No 663.   Decided June 10, 1935

Paul A. Baden, Hamilton, for plaintiff in error.

Eli G. Frankenstein, Cincinnati, for defendant in error.

**OPINION**

By HAMILTON, J.

The defendant's first claim is that the land belongs to the United States of America in fee simple, and therefore under the ordinance of 1787 is exempt from any land tax. It is unnecessary to discuss the proposition that if the land belongs in fee to the United States of America, the local authorities cannot assess it for taxation.

The answer sets out the Act of the Federal Government of 1803, wherein it bears on the subject, and sets up §4 of that Act which provides: "That one complete township, in the State of Ohio, and district of Cincinnati, or so much of any one complete township, within the same, as may then remain unsold, together with as many adjoining sections as shall have been sold in the said townships, so as to make in the whole thirty-six sections, to be located under the direction of the legislature of the state of Ohio, on or before the first day of October next, with the register of the land office in Cincinnati, be, and the same is hereby, vested in the legislature of the state of Ohio, for the purpose of establishing an academy, in lieu of the township already granted for the same purpose, by virtue of the act entitled "An Act authorizing the grant and conveyance of certain lands to John Cleves Symmes and his Associates; 'PROVIDED, HOWEVER, that the same shall revert to the United States, if, within five years after the passing of this act, a township shall have been secured for the said purpose, within the boundary of the patent, granted by virtue of the above mentioned act, to John Cleves Symmes and his association'."

Now, so far as the allegations of the answer are concerned, it must be taken that the reverter provided for in the act did not materialize. It further shows that the Federal Government acknowledged the full parting of the title to the property with the exception of the right of reversion.

No claim having been set up by the United States, no exemption of the payment of local taxes can be successfully maintained, on that issue.

Next, it is claimed that if the title is not in the United States of America, that it is in the State of Ohio, and, therefore, the County of Butler cannot levy taxes on lands which are the property of the state of Ohio.

The answer to this is, that in the Act establishing the Miami University it gave to the University corporation the power of sale and lease of the property. The sale of which could confer full and complete title and provided that the tenants or lessees should enjoy all the rights and privileges which they would be entitled to enjoy if they held the land in fee simple, any law to the contrary notwithstanding.

Section 15 of the Act did reserve to the legislature of the State of Ohio the right to grant any greater and further powers to, or alter, limit or restrain in any of the powers by this Act, vested in the said corporation, as shall be necessary to promote the best interests of said University.

Thus did the state give to the corporation the right to contract away the property, and when it did so, the parties to the contract are protected by the Constitution if the lands were sold and became privately owned.

Under the decision in the case of **Armstrong et v Treasurer of Athens County, 10 Ohio Rep., 235,** the exemption provided for in the law would not give the purchaser exemption as against taxation. So that whatever rights or reservations the legislature may have reserved to itself could not be considered such by an owner, as would preclude taxation as state property. The act provides only for exemption from STATE TAXES, and, therefore, it must be held that if there are such taxes not included in the phrase "state taxes," the legislature has not reserved that exemption to itself.

This brings us to the point that is mainly stressed by counsel in their briefs, and it is practically conceded by counsel for plaintiff, plaintiff in error here, that if the local taxes are included under the phrase "state taxes," all of this property in question is exempt from all taxes.

It must be borne in mind that the establishment of Miami University and the laws creating the same were passed in the early history of the State, when townships were

in the making, and all taxes were assessed by the state, for the benefit of the state government. It must have been considered that subdivisions of the state would be created and towns and municipalities would be created, none of which could exist without local taxes being assessed against the property and the property owners of the respective subdivisions. The legislature must have known that such local taxes would be necessary, and proceeded, therefore, to exempt only state taxes.

Counsel argues that the only taxing power in the state is in the legislature. We cannot agree with this, since we have had local taxes in the form of occupational taxes and other local taxation; we also have the issuing of municipal bonds and the levying of a tax by the local authorities to pay the same. Counsel evidently confuse the levying of taxes with the power to authorize the levy of taxes. There, undoubtedly, must be some legislative or constitutional authorization for the subdivisions to levy taxes. The question here is not one of the power to levy taxes. It is a question of exemption of property, which, it is claimed, is not subject to taxation under power granted by the legislature.

The legislature provided in the Act creating Miami University that the property selected for it should not be subject to state taxes, but in the act itself it provided for a reservation of territory for the establishment of a township, which it must have known could not operate without taxation.

Our conclusion is that the phrase "state taxes" meant state taxes and not local taxes, which are clearly distinguishable in their allocation. This is suggested in the case of Armstrong et v Treasurer of Athens County, supra, where a similar question arose with reference to the Ohio University at Athens. The court in the course of the opinion states:

"Now what is the nature and extent of this exemption? Is it a privilege attached to, and running with the land? It seems to us that it can not be so considered, because the land itself is not exempted from any burden. It is still liable to county taxation."

It is urged that one of the allegations of the reply, referred to as an estoppel, cannot apply, and presents no defense to the answer.

It must be borne in mind that the phrase "state taxes" as presented here is a matter for construction. We have construed the phrase to mean taxes levied and collected by the state for state purposes, and was not intended to include local taxation. This being a matter for construction, we may turn to the construction placed upon it by the parties holding these leaseholds, in this case, the defendant and her predecessors. The reply states that for 90 years the taxes have been paid without protest. In fact up to the time of the filing of the answer in this case, there never was any challenge to the right to collect the taxes, and the answer herein constituted the first challenge. This proposition of acquiescence of certain construction of statutory law is presented in the case of Givem et. v Wright, etc., 117 U. S., 648. The syllabus is as follows:

"An exemption from taxation granted by the government to an individual is a franchise, which can be lost by acquiescence under the imposition of taxes for a period long enough to raise a conclusive presumption of a surrender of the privilege; and such acquiescence for a period of sixty years (and, indeed, for a much shorter period) raises such a presumption."

The opinion in the case of Given v Wright, by Mr. Justice Bradley, states:

"We have carefully read the evidence in this case, and are satisfied that the lands were regularly assessed for taxes, and that the taxes were paid without objection from 1814, or about that time, down to 1876, the time of the assessment complained of—a period of sixty years. If an exemption from taxation can be lost in any case, by long acquiescence under the imposition of taxes, it would seem that an acquiescence of sixty years, and, indeed, a much shorter period, would be amply sufficient for this purpose, by raising a conclusive presumption of a surrender of the privilege. An easement may be lost by nonuser in twenty years, and even in a lses time if it is affected by positive acts of invasion. A franchise may be lost in the same way, nonuser being one of the common grounds assigned as a cause of forfeiture. * * * Exemption from taxation being a special privilege granted by the government to an individual, either in gross, or as appurtenant to his freehold, is a franchise. Nonuser for sixty, or even thirty years, may well be regarded as presumptive proof of its abandonment or surrender. * * * It is not merely a case of nonuser, but one of disaffirmance of the privilege for this long period."

This rule of law has been approved in N. Y. Electric Lines Co. v Empire State

Subway Co., 235 U. S., 179, 194; Jetton, etc. v University of the South, 208 U. S., 489, 503; McCullough v Virginia, 172 U. S., 102, 119. See also: **Industrial Commission v Brown, 92 Oh St, 309, 311; and State ex v Brown, etc., 121 Oh St, 73, 75.**

In the case under consideration we have a disaffirmance of the privilege, if one existed, for ninety years.

Our conclusion is that this disaffirmance of the privilege, if such ever existed, is presumptive proof of its abandonment and surrender. We have, therefore, two main reasons for holding that the fair construction of the phrase "state taxes" refers to taxes levied by the legislature for state purposes, as contradistinguished from local taxes, and therefore removes the property from the exemption granted under the head of state taxes; second, the long acquiesence in the payment of the taxes (for ninety years) is a disaffirmance of the privilege of exemption, if one was given.

The judgment sustaining the demurrer to the reply will be reversed, and the cause will be remanded to the Court of Common Pleas of Butler County, with instructions to overrule the demurrer, to reinstate the amended reply, and for further proceedings according to law.

ROSS, PJ, and MATTHEWS, J, concur.