ASSESSORS OF BOSTON *vs.* BOSTON ELEVATED RAILWAY COMPANY
(and twelve companion cases between the same parties).

Suffolk.   December 2, 3, 1946. — January 6, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Taxation*, Street railway; Real estate tax: exemption, abatement. *Street Railway*, Taxation. *Boston Elevated Railway Company*. *Estoppel*.

Lands in Boston, which were taken by the Boston Elevated Railway Company by the exercise of eminent domain under St. 1894, c. 548, as amended, and St. 1907, c. 497, or which might have been so taken but were purchased, and whose principal and dominant use by the company in the years 1939, 1940, and 1942 was for railway purposes, were devoted to a public use although there also was some revenue derived from incidental concessions, rentals and sale of a very small percentage of electric power from its power station; and such lands therefore were exempt from local taxation.

An application by the Boston Elevated Railway Company for abatement of a real estate tax, filed with the assessors of taxes of Boston upon a form approved by the commissioner of corporations and taxa-

tion which included no questions asking for reasons for seeking abatement, and setting forth that the company was aggrieved by an assessment for a named year and "hereby applies for abatement" without specifying a reason for seeking it, although it included statements of the assessed valuation and of the company's valuation of the property in blank spaces designated in the form, did not limit the company to a claim for abatement based solely on overvaluation of the property by the assessors but was broad enough to ground a claim that the property was exempt from taxation because it was appropriated to a public use and had been acquired by the exercise of eminent domain or might have been so acquired but was purchased.

The implied exemption from local taxation of land appropriated to a public use by the owner, who had acquired it by the exercise of eminent domain or might have so acquired it but had purchased it, was not intended to be and is not affected by G. L. (Ter. Ed.) c. 59, § 2, and its predecessors.

The Boston Elevated Railway Company was shown not to have lost its right to exemption from taxation in certain years of real estate, which it had acquired by the exercise of eminent domain or might have so acquired, but had purchased, and which it devoted to a public use, by reason of its attitude and conduct respecting taxes for previous years, known to the assessors of taxes of Boston and described in detailed findings by the Appellate Tax Board, who also found as a conclusion that there had been no acquiescence by the company in the assessment.

The Boston Elevated Railway Company was not estopped to set up the invalidity of a tax upon its real estate for certain years merely by reason of the fact that during a previous period of years it had not pressed for a complete abatement to which it was entitled, where it appeared that the assessors of Boston had continued to assess the tax and the city to collect it and that the city had suffered no disadvantage from the company's failure earlier to challenge the validity of the tax.

Conduct of the public trustees of the Boston Elevated Railway Company appointed under St. 1918, c. 159, in paying a local tax upon certain property of the company was not evidence of the validity of the tax, and did not preclude the company from insisting in later years that the property was exempt from taxation.

Section 10 of St. 1897, c. 500, left unaffected the implied exemption from taxation of real estate which the Boston Elevated Railway Company had acquired by the exercise of eminent domain or which it might have so acquired but had purchased, and which it devoted to public use.

There is nothing in Spec. St. 1918, c. 159, as amended and extended by St. 1931, c. 333, that directly or by necessary implication removes the exemption from taxation of real estate which the Boston Elevated Railway Company acquired by the exercise of eminent domain or which, having the power to so acquire, it purchased, and which it devotes to public use.

The power to tax does not rest upon implication; it does not exist unless it is plainly conferred by a statute.

APPEALS from decisions by the Appellate Tax Board.

*J. W. Kelleher*, Assistant Corporation Counsel, (*W. H. Kerr* with him,) for assessors of Boston.

*C. W. Mulcahy*, (*J. F. Kelly & J. J. Maloney, Jr.*, with him,) for the taxpayer.

RONAN, J.    These are thirteen appeals from orders granting abatements to the Boston Elevated Railway Company on account of taxes assessed in 1939, 1940 and 1942 upon various parcels for these years, involving in all six parcels of land which comprised the Dudley Street Terminal, the Sullivan Square Station, the Lincoln Power Station and three areas used for shops and yards, all of which parcels were taken by eminent domain by the company under St. 1894, c. 548, as amended, and St. 1907, c. 497, except portions of some of the shop and yard areas purchased by the company, which had authority to take them by eminent domain.    The Appellate Tax Board, herein called the board, made detailed findings with respect to the use made by the company of each of these parcels.    There were telephone booths, bootblack stands, barber shops, fruit stands, news stands, pay toilets, parcel lockers, vending and weighing machines, and advertising signs and posters at the Dudley Street Terminal and the Sullivan Square Station.    Billboards were located upon some of the properties.    A small amount of power generated by the company was sold. The revenue received from concessions, rent of buildings, sale of power and miscellaneous items varied from 1938 to 1942, inclusive, from .0187 per cent to .0232 per cent of the total revenue from transportation · of passengers.    The board found that some of these properties were used entirely for railway purposes, that the billboard privileges were merely an incidental use, that the principal and dominant use of the Dudley Street Terminal and the Sullivan Square Station was the transportation of passengers, and that the concessions located at these places were for the benefit and convenience of the travelling public.    The dominant use of the power station was for railway purposes, and the sale of power, which represented a very small percentage of the power developed at this station, was merely

incidental. The parties stipulated that the value of a store building located under the elevated structure at the Dudley Street Terminal was $20,000, and the assessment of the tax at this value was sustained in the three petitions filed with reference to the Dudley Street Terminal.

The operation of a large transportation system for the carriage of passengers in Boston and its suburbs, by means of electric railways on the public ways, on elevated structures and through tunnels and subways, constitutes a business of a public nature conducted for the accommodation of and in the interest of that portion of the general public to whom the furnishing of such facilities is almost daily a practical necessity, *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, *Opinion of the Justices*, 261 Mass. 556, *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528; and the property of the company which is employed in furnishing such service is devoted to a public use even though there is also an incidental use, similar to that commonly found in depots, airport stations, bus terminals and waiting rooms, for the convenience of the passengers. *Emerson* v. *Milton Academy*, 185 Mass. 414. *Collector of Taxes of Milton* v. *Boston*, 278 Mass. 274. *County of Middlesex* v. *Waltham*, 278 Mass. 514. *Assessors of Boston* v. *Lamson*, 316 Mass. 166.

The law of this Commonwealth is that land appropriated to a public use by the owner, who acquired or might have acquired it by the exercise of eminent domain, is exempt from taxation by the city or town in which it is located in the absence of a statute making it subject to such taxation. This principle and the reasons upon which it rests were clearly set forth in *Worcester* v. *Western Railroad*, 4 Met. 564, and have since been frequently and uniformly adopted in a long line of decisions, the most recent of which is *Assessors of Boston* v. *Boston, Revere Beach & Lynn Railroad*, 319 Mass. 378. The principle is decisive if applicable to the instant cases.

Before passing to the merits it is necessary to decide the contentions of the assessors that the company was not aggrieved by the refusal of the assessors to grant the abate-

ments and that the board lacked jurisdiction to grant abatements because, as they urge, none of the applications filed by the company requested an abatement on the ground that the property was exempt from taxation. All of these applications were upon forms approved by the commissioner of corporations and taxation and were duly filed with the assessors[1] and, no action having been taken by them, appeals were seasonably taken to the board. They were signed by the company by its vice-president and treasurer. Each stated that the company was aggrieved by the assessment of a real estate tax for a named year upon a parcel of land which was adequately described, and "hereby applies for abatement." The description in the majority of the applications showed that the parcel was used as a part of the company's transportation system, but such use was not to be so readily understood from the descriptions stated in the rest of the applications. Each application stated the assessed valuation and the owner's valuation in the blank spaces designed for this purpose. None of the applications stated the reasons for seeking an abatement, and no questions asking for the reasons appeared in the forms. It is strongly urged that the statements of the assessed and the owner's valuations showed that an abatement was sought only on the ground that the property had been overvalued by the assessors. Doubtless, the applications were in proper form to request an abatement on this account. These applications, however, are not to be construed as so limited and confined. It was to be reasonably expected that the company would fill in the assessed valuation and its own valuation, as it was virtually invited to do by the manner in which the form was made up. It is not to be assumed that the company would incur whatever risk might arise from its failure to fill in these values on the forms. The company might have stated in the applications that an abatement of the entire tax was sought for the reason that the property was exempt from taxation and then have them approved as to form by the commissioner of corporations and taxation,

---

[1] The three applications filed on October 27, 1939, were seasonably filed by virtue of St. 1939, c. 493, § 2.

as was done by the taxpayer in *Assessors of Boston* v. *Boston, Revere Beach & Lynn Railroad,* 319 Mass. 378, but we do not think it was required to do so. It was using the proper form for an abatement of the tax. It is not contended here, as it was in *Assessors of Brookline* v. *Prudential Ins. Co.* 310 Mass. 300, that the taxpayer had not properly filled out the blanks. No statute has been brought to our attention and we are not aware of any that requires the taxpayer seeking an abatement of a tax wrongfully assessed upon exempt property to specify such a ground in his application. Here was a public service corporation seeking abatement of a tax upon well known terminals, a power house, yards and shops, and it was resorting to a procedure that the assessors must be assumed to know was available to one to secure an abatement of an excessive tax, or an abatement of the entire tax if shown to have been illegally assessed or to have been laid on property not subject to taxation. *Welch* v. *Boston,* 211 Mass. 178, 186. *Sears* v. *Nahant,* 221 Mass. 435. *Sullivan* v. *Ashfield,* 227 Mass. 24, 26. *Thayer Academy* v. *Assessors of Braintree,* 232 Mass. 402, 407. *Central National Bank* v. *Lynn,* 259 Mass. 1, 7. *Assessors of Quincy* v. *Cunningham Foundation,* 305 Mass. 411. *Assessors of Brookline* v. *Prudential Ins. Co.* 310 Mass. 300, 312. In somewhat analogous cases it has been held that a taxpayer is not estopped to prosecute a proceeding for an abatement of taxes merely because he included in a list filed with the assessors property he claimed was exempt from taxation or should not have been listed. *Sears* v. *Nahant,* 221 Mass. 437. *Hamilton Manuf. Co.* v. *Lowell,* 274 Mass. 477. *Commissioner of Corporations & Taxation* v. *Ford Motor Co.* 308 Mass. 558. We think that the applications were broad enough to permit the company to rest its claims for abatements upon the ground that the properties were exempt from taxation. *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491.

The assessors point to a statement in the opinion of the board that the applications "did not set forth claims for exemption," but we think that the board did not intend to go beyond the particular finding appearing in its findings

of fact which read that "The applications did not state specifically that the company claimed exemption."

The board ruled that the company's land was not expressly exempt from taxation, and it is now urged that the board could not grant abatements because that would be contrary to G. L. (Ter. Ed.) c. 59, § 2, which provides that "All property, real and personal, situated within the commonwealth . . . unless expressly exempt, shall be subject to taxation." This statute, in so far as now material, is in the same form as was Rev. Sts. c. 7, § 2, at the time of the decision in *Worcester* v. *Western Railroad*, 4 Met. 564. We are here dealing with an implied exemption which this court, since the case cited, has recognized notwithstanding what is now § 2. These decisions must have been known to the Legislature, and it must be assumed that the Legislature except in the few instances where statutes were enacted to eliminate this implied exemption, was content to have the application of § 2 limited as it was by these decisions. *Welch* v. *Commissioner of Corporations & Taxation*, 309 Mass. 293, 300, and cases cited. See St. 1907, c. 329, enacted as a result of *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491, and also St. 1946, c. 393. [1]

The company did not lose the right to the exemption by failure to claim it before 1939 or by acquiescence in paying taxes upon these properties for many years prior to the last mentioned year. The board made detailed findings, from which it appeared that, from the time of its incorporation in 1894, no specific claim for exemption was made until 1939; that until 1932 it made little difference to the company whether the properties were locally assessed or not because the difference would be paid in its franchise tax; that a change in the capital structure occurred in 1932, and ever since that date the company periodically filed applications for abatements upon which partial abatements were granted until 1939; that the officers of the company before 1932 were aware that the properties were probably exempt but were content to accept partial abatements rather than to insist that its properties were exempt from taxation be-

---

[1] The questions here presented are not likely to arise again because of St. 1946, c. 393.

cause of the financial burden it would impose on the city; and that this attitude of the company existed up to 1942 and was known to the assessors, and when abatements were refused the company pressed its claims for exemption. The board found that there was no acquiescence by the company in the taxing of these properties, which it now contends are exempt, and the city was not harmed by the failure of the company to insist upon its rights.

The exemptions now in question did not arise out of any contract but exist under the law so long as the use continues. *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491. *Assessors of Quincy* v. *Cunningham Foundation,* 305 Mass. 411. Here it is enough to say that the application of the correct principles of law to the findings made by the board requires the conclusion that the right to enjoy the exemption was not lost by the company. *Landon* v. *Litchfield,* 11 Conn. 251. *Langworthy* v. *Dubuque,* 13 Iowa, 86. *Oak Lawn Cemetery* v. *County Commissioners of Baltimore County,* 174 Md. 280. *Gully* v. *Wilmut Gas & Oil Co.* 174 Miss. 794. *Hale* v. *County of Jefferson,* 39 Mont. 137. *Knights of Columbus Building Association of Bristol, Rhode Island, Inc.* v. *Gorham,* 67 R. I. 423. *Nashville Labor Temple* v. *Nashville,* 146 Tenn. 429. Compare *Given* v. *Wright,* 117 U. S. 648; *Du-Bois* v. *Baker,* 52 Ohio App. 148; *Pima County* v. *Weddle,* 54 Ariz. 525; *Rutgers Chapter of Delta Upsilon Fraternity* v. *New Brunswick,* 129 N. J. L. 238; *Brattleboro Retreat* v. *Brattleboro,* 106 Vt. 228.

Only a word need be said with reference to estoppel. The assessors and the city have not shown that they have been misled to their harm by the conduct of the company in delaying to insist upon its rights. The assessors continued to assess the tax and the city to collect it, and the city suffered no disadvantage by the refusal of the company to challenge the validity of the tax to the receipt of which the city had no legal claim. The company was not estopped to set up the invalidity of the assessments for the years in question. *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286. *McLearn* v. *Hill,* 276 Mass. 519, 524. *Abbott* v. *Bean,* 295 Mass. 268, 278–279.

The assessors point out that the company since Spec. St. 1918, c. 159, the public control act so called, has been under the management of the public trustees, a board of public officers, whose conduct in paying the taxes discloses an administrative practice which is entitled to great weight as indicating that the taxes were due to the city. But the public trustees were not charged with the assessment and collection of taxes. The performance of those duties belonged to other public officers. Furthermore their practice, if assumed in the absence of any findings to have been uniform and long continued with reference to the assessment and collection of taxes upon properties exempt from taxation, when shown to have been unauthorized by law, is not affirmative evidence of the validity of the tax. *Allen* v. *Commissioner of Corporations & Taxation,* 272 Mass. 502. *Modern Finance Co.* v. *Holz,* 307 Mass. 281.

The charter of the company, St. 1894, c. 548, was amended by St. 1897, c. 500. Section 10 of this last chapter provided that for a "period of twenty-five years no taxes or excises not at present in fact imposed upon street railways shall be imposed in respect of the lines owned, leased or operated by said corporation." This provision was inserted for the benefit of the company. The section did not create any tax, and the recognition by the Legislature that the company was then subject to taxes that were "in fact imposed upon street railways" must be construed to mean taxes that were lawfully imposed. This section alone did not require the company to pay any taxes or excises whatever, but simply provided that no further or additional taxes would be imposed upon the company during the period of twenty-five years. The section left unaffected any implied exemption from taxation the company might then have possessed. See *Connecticut Valley Street Railway* v. *Northampton,* 213 Mass. 54.

The public control act, Spec. St. 1918, c. 159, as amended and extended by St. 1931, c. 333, expressly provided for the inclusion of taxes as an item of expense in determining the cost of service. See § 6 of said c. 159. But both of these chapters were concerned with the operation of a transpor-

tation system by a board of public officers and were not taxing statutes. They did not subject to taxation property theretofore exempt.

The assessors urge that the granting of an exemption upon the property of the company would result in such a radical change in the legislative plan for the distribution of the costs resulting from the operation of the railway by the public trustees that the Legislature could never have intended that the company should not be compelled to pay taxes to cities and towns within which its real estate was located. But there is nothing in the public control act that directly or by necessary implication removes the exemption from taxation which the company now claims. Furthermore, the power to tax does not rest upon implication, and it does not exist unless it is plainly conferred by a statute. *Commissioner of Corporations & Taxation* v. *Williston*, 315 Mass. 648, 651. *Dexter* v. *Commissioner of Corporations & Taxation*, 316 Mass. 31, 38. We need not decide whether the granting of the exemption would free the company from any tax liability on account of these properties in the computation of the corporate franchise tax, G. L. (Ter. Ed.) c. 63, §§ 53–60, as amended, or otherwise.

The assessors have no just complaint against the finding that the filing and prosecution of the applications for abatements and the appeals to the board were authorized by the company.[1] *Trustees of Smith Charities* v. *Connolly*, 157 Mass. 272. *Knight* v. *Whitmore Manuf. Co.* 248 Mass. 531. *Alden Bros. Co.* v. *Dunn*, 264 Mass. 355. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 298 Mass. 53.

---

[1] The findings by the Appellate Tax Board on this subject were as follows: "The city has raised the issue that the cases are not properly before us because the filing of the applications for abatement and the subsequent appeals to this board were not authorized by the board of trustees of the company. On this issue we find the following facts: The applications for abatement and the petitions to this board were signed by John H. Moran. Mr. Moran has been the executive vice-president and treasurer of the company since 1940. Prior to that he had at various times been vice-president and treasurer, vice-president and comptroller, and general auditor. Before filing the applications for abatement he informed the trustees of his proposed action and it was approved by them. The filing of the petitions with this board was also taken up with the trustees who approved. Furthermore, he was authorized by the regulations of the board of trustees "to execute in the name and on behalf of the company and to handle and prosecute applications for the abatement or refund of taxes, and for the adjustment and settlement thereof, subject to the approval of the board." — REPORTER.

We have examined all the various questions of law raised by the assessors with respect to the denial by the board of numerous requests for rulings. In view of what has been said, there is no need of further discussion of any of them. None of the findings of fact that have been challenged was vitiated by any error of law. *Commissioner of Corporations & Taxation* v. *Boston Edison Co.* 310 Mass. 674. *Assessors of Boston* v. *Lamson,* 316 Mass. 166.

It follows that abatements must be granted in the respective amounts found by the board and the treasurer of the city of Boston is ordered to pay to the company said amounts with interest at the rate of four per cent per annum from the dates of payment of said taxes, together with the costs of these appeals. *Assessors of Boston* v. *Metropolitan Life Ins. Co., ante,* 559.

*So ordered.*