BOARD OF ASSESSORS OF WILMINGTON *vs.*
AVCO CORPORATION.

Suffolk.    March 5, 1970. — June 18, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Taxation,* Exemption, Property of the United States, Intergovernmental immunity.  *Constitutional Law,* Taxation.

Structures owned by the United States and used by a corporation in conducting a business for profit pursuant to a contract with the Air Force on privately owned land were not exempt from local taxation under G. L. c. 59, § 5, First.

APPEAL from a decision by the Appellate Tax Board.

*Alan Altman,* Town Counsel, for the Board of Assessors of Wilmington.

*Charles H. Loring* for the taxpayer.

REARDON, J.  The board of assessors of Wilmington (assessors) appeal from the decision of the Appellate Tax Board (board) which granted an exemption to Avco Corporation (Avco) of a part of real estate found to be exempt under the provisions of G. L. c. 59, § 5, First.  The assessors allege other errors by the board in its action upon their request for rulings and in its denial of their plea in bar. They also allege that as matter of law Avco had no standing to claim exemption.

Prior to August 14, 1961, Avco was performing work for the United States Air Force under a general contract and on that date was authorized to expend up to $250,000 of certain funds to construct a radar range for Mark II development on stated terms. On October 16, 1961, the Air Force issued to Avco a modification under the outstanding contract authorizing it to measure low radar cross section design achievements, and further authorizing it to acquire the necessary special test equipment. On February 1, 1962, Avco entered into a three year lease with two consecutive three year options with John R. Evans and Betty Jane Evans (lessors), owners of a parcel of land in Wilmington. Under the terms of this lease Avco bound itself to pay to the lessors as additional rent the amount of annual real estate taxes assessed against the premises. Thereafter, Avco contracted with a Pennsylvania firm for the design, building and installation of three 400 foot towers which were installed on the lessors' property. Each of these towers rests upon a concrete foundation braced by guy wires "which are removably attached to concrete anchors buried in the ground. One of the towers, including a hydraulic lifting mechanism, is bolted to its foundation while the other two towers removably engage pivot pins projecting vertically from their foundations." The basic contract between Avco and the Air Force provides, inter alia, that "[t]itle to all property purchased by the Contractor, for the cost of which the Contractor is entitled to be reimbursed as a direct item of cost under this contract, shall pass to and vest in the Government upon delivery of such property by the vendor." It is further provided that "[t]itle to the Government Property shall not be affected by the incorporation or attachment thereof to any property not owned by the Government, nor shall such Government Property, or any part thereof, be or become a fixture or lose its identity as personalty by reason of affixation to any realty." The basic contract also entitled Avco to be reimbursed for rent paid to the lessors and also for real estate taxes on the locus assessed and paid by Avco to the town of Wilmington.

The petition orginally brought by Avco under the formal procedure was from the refusal of the assessors to abate the tax for the year 1965, the assessment of which included the real estate, a building, a trailer, a garage and the towers. The question before us is whether the towers erected under a contract at a cost fully reimbursed to Avco are immune from local real estate taxation where under the basic contract with the Air Force the United States government is entitled to the improvement of the land. The decision of the board was to the effect that the exemption claimed by Avco under G. L. c. 59, § 5, First, was to be granted. We consider the propriety of this action in this appeal.

1. General Laws c. 59, § 3, provides in part that "[r]eal estate for the purpose of taxation shall include all land within the commonwealth and all buildings and other things erected thereon or affixed thereto." As we stated in *Franklin* v. *Metcalfe*, 307 Mass. 386, 389, "[l]and and the buildings 'erected thereon or affixed thereto' are properly taxed as a unit and this rule is not affected by private agreements or by the degree of physical attachment to the land." See cases there cited.

2. General Laws c. 59, § 5, as amended, provides in part, "The following property shall be exempt from taxation: First. Property owned by the United States so far as the taxation of such property is constitutionally prohibited, excepting property which the Congress of the United States has permitted to be subject to local taxation." In *Milton* v. *Ladd*, 348 Mass. 762, 765, we stated that "[a]n exemption from taxation is a privilege. It is not to be recognized unless it is shown that the privilege of exemption is conferred either by the express words or the necessary implication of some statute." Statutory exemptions are subject to strict construction and we thus assess the propriety of the granting of this exemption in the light of our own language which has been repeated many times.

3. In *First Agricultural Natl. Bank* v. *State Tax Commn.* 353 Mass. 172, we considered at length the proposition that privately owned corporations organized for profit which

perform some governmental functions are not thereby immunized from nondiscriminatory State taxation of general application. In that case we were dealing with the possible liability of national banks to payment of the Massachusetts sales and use tax. Our decision in favor of the tax commission was reversed by the Supreme Court of the United States largely on the basis that 12 U. S. C. § 548 (1964), until changed, by inference prohibited the imposition on national banks of any such tax by the States.[1] In our decision we made reference to the so called "Michigan cases" which involved the effect of a Michigan tax statute upon entities employing government property in conjunction with a business operated for private gain. *United States* v. *Detroit,* 355 U. S. 466. *United States* v. *Muskegon,* 355 U. S. 484. *Detroit* v. *Murray Corp. of America,* 355 U. S. 489.

Reference to these cases is in large measure determinative of the question we have before us. In *United States* v. *Detroit, supra,* at 469, it was said, "This Court has held that a State cannot constitutionally levy a tax directly against the Government of the United States or its property without the consent of Congress. *M'Culloch* v. *Maryland,* 4 Wheat. 316; *Van Brocklin* v. *Tennessee,* 117 U. S. 151. At the same time it is well settled that the Government's constitutional immunity does not shield private parties with whom it does business from state taxes imposed on them merely because part or all of the financial burden of the tax eventually falls on the Government. See, e.g., *James* v. *Dravo Contracting Co.* 302 U. S. 134; *Graves* v. *New York ex rel. O'Keefe,* 306 U. S. 466; *Alabama* v. *King & Boozer,* 314 U. S. 1."[2]

---

[1] 12 U. S. C. § 548 (Supp. V, 1965–1969) [U. S. C. A. March, 1970, p. 262], was amended thereafter by Public Law 91–156, 83 Stat. 434, to permit imposition on national banks of State sales and use taxes.

[2] In the "Michigan cases" the United States asked the Supreme Court to strike down as unconstitutional the following statute as it applied to a lessee of government property:

"An Act to provide for the taxation of lessees and users of tax-exempt property.

"Sec. 1. When any real property which for any reason is exempt from taxation is leased, loaned or otherwise made available to and used by a private individual, association or corporation in connection with a business conducted for profit, except where the use is by way of a concession in or relative to the

In the *Muskegon* case, 355 U. S. 484, at 486, the court pointed out that constitutional immunity from "state taxation does not rest on such insubstantial formalities as whether the party using government property is formally designated a 'lessee.' Otherwise immunity could be conferred by a simple stroke of the draftsman's pen. The vital thing under the Michigan statute, and we think permissibly so, is that Continental was using the property in connection with its own commercial activities." The court went on to say on the same page, "If under certain conditions the State can tax Continental for use of government property in connection with its business conducted for profit . . . the fact that Continental was carrying out a contract with the Government does not materially alter the case. Continental was still acting as a private enterprise selling goods to the United States." The court made particular reference in its decision in the *Muskegon* case to *Curry* v. *United States,* 314 U. S. 14, where a contractor engaged in a cost-plus contract with the United States and purchased materials which were shipped to a government construction project where they were employed by the contractor in performing it. Title to the materials in the *Curry* case passed to the United States as soon as they were shipped by the vendor. Here the State imposed a State use tax on the contractor and the court unanimously upheld that tax although it was in effect a tax on the use of government property in the performance of a government contract. Reference to this and similar cases was made by us in the *First Agricultural*

use of a public airport, park, market, fair ground or similar property which is available to the use of the general public [sic], shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property: Provided, however, That the foregoing shall not apply to federal property for which payments are made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed or property of any state-supported educational institution.

"Sec. 2. Taxes shall be assessed to such lessees or users of real property and collected in the same manner as taxes assessed to owners of real property, except that such taxes shall not become a lien against the property. When due, such taxes shall constitute a debt due from the lessee or user to the township, city, village, county and school district for which the taxes were assessed and shall be recoverable by direct action of assumpsit." 6 Mich. Stat. Anno. 1950 (1957 Cum. Supp.) §§ 7.7 (5) and (6).

*Natl. Bank* case, 353 Mass. at 190. See *United States* v. *Boyd, Commr.* 378 U. S. 39.

The facts in this case are analogous to those in the "Michigan cases," and compel a similar result. Here, Avco was conducting a private business for profit, employing government facilities. This use does not immunize Avco from a nondiscriminatory State tax of general application. See *United States* v. *Detroit, supra,* at 474. We therefore conclude that the town properly assessed a tax on the structures on which Avco claimed an exemption, and that no exemption under G. L. c. 59, § 5, First, is available to Avco.

4. In view of our disposition of this appeal we do not discuss the arguments made by the assessors relative to the jurisdiction of the board and the standing of Avco.

5. The action by the board on such of the assessors' requests as were applicable was erroneous. The decision of the board is reversed and a decision for the assessors is to be entered.

*So ordered.*