832          388 Mass. 832

Children's Hospital Medical Center *v.* Board of Assessors of Boston.

THE CHILDREN'S HOSPITAL MEDICAL CENTER *vs.*
BOARD OF ASSESSORS OF BOSTON
(and a companion case).

Suffolk. December 10, 1982. — April 19, 1983.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Appellate Tax Board,* Jurisdiction. *Taxation,* Real estate tax: exemption, abatement. *Charity. Corporation,* Charitable corporation.

Failure of an organization to file with local assessors the descriptive list, statement, and certification required by G. L. c. 59, § 5, Third (*b*), and § 29, was a jurisdictional defect which would render the assessors powerless to grant the organization a charitable exemption from taxation and which would preclude the Appellate Tax Board from granting relief to the organization on appeal from the assessors' denial of an abatement. [835-839]

Where, on appeal to this court from a decision of the Appellate Tax Board, local assessors urged, as a ground of objection to the jurisdiction of the board, a taxpayer's alleged failure to make timely filing with the assessors of Department of Revenue Form 3 ABC, and this contention imported a factual dispute which each party contended had not been presented by the other to the board, this court remanded the case to the board for an additional hearing and explicit findings. [840-843]

The Appellate Tax Board, on remand of a case, was to articulate its basis for concluding that a taxpayer's failure to file with local assessors an application for a statutory tax exemption on Department of Revenue Form 1B-3 would deprive the board of jurisdiction over the taxpayer's appeals. [843-845]

APPEALS from decisions of the Appellate Tax Board.

*Kenneth J. Mickiewicz* (*Warren F. Fitzgerald* with him) for the plaintiff.

*Lance R. Pomerantz,* Special Assistant Corporation Counsel (*Peter Antell,* Special Assistant Corporation Counsel, with him) for the defendant.

388 Mass. 832                                                    833

Children's Hospital Medical Center *v*. Board of Assessors of Boston.

LYNCH, J.  The sole issue presented by these consolidated appeals is the jurisdiction of the Appellate Tax Board (board) over an appeal from a denial of applications for abatement of real property tax assessed for fiscal year 1978,[1] which applications asserted the ground of charitable exemption under G. L. c. 59, § 5, Third.[2]  On September 30, 1977, the board of assessors of Boston (assessors) assessed taxes in the aggregate amount of $170,049.96 on two parcels owned by The Children's Hospital Medical Center (CHMC). On October 28, 1977, pursuant to G. L. c. 59, § 59, CHMC paid one-half of the taxes assessed and filed with the assessors two applications for abatement on the form prescribed therefor and approved by the Commissioner of Corporations and Taxation[3] (Form 128).  Thereafter CHMC received from the assessors "Abatement Information Requisitions" which were completed, and filed on December 19, 1977.[4]

---

[1] General Laws c. 44, § 56A, as amended through St. 1973, c. 52, § 14, provides that the fiscal year for cities "shall begin with July first and end with the following June thirtieth."  Fiscal year 1978 began on July 1, 1977.

[2] General Laws c. 59, § 5, Third, as amended through St. 1970, c. 219, provided in material part:  "The following property shall be exempt from taxation . . . .  Third . . . real estate owned by or held in trust for a charitable organization and occupied by it or its officers for the purposes for which it is organized or by another charitable organization . . . for the purposes of such other charitable organization . . . provided, however, that: — (*a*) If any of the income or profits of the business of the charitable organization is divided among the stockholders, the trustees or the members, or is used or appropriated for other than literary, benevolent, charitable, scientific or temperance purposes or if upon dissolution of such organization a distribution of the profits, income or assets may be made to any stockholder, trustee or member, its property shall not be extempt; and (*b*) A corporation coming within the foregoing description of a charitable organization . . . shall not be exempt for any year in which it omits to bring in to the assessors the list and statement required by section twenty-nine and a certification under oath that the report for such year required by section eight F of chapter twelve has been filed with the division of public charities in the department of the attorney general . . . ."

[3] General Laws c. 58, § 1, as amended through St. 1978, c. 514, § 34, changed the title to Commissioner of Revenue.

[4] The completed requisitions are not included in the record.  CHMC asserts, and the assessors do not deny, that CHMC informed the assessors that it was a charitable organization and that the parcels were used by it or by another charitable organization for the purposes of the organization.

The assessors failed to take any action on CHMC's applications within three months, and the applications were deemed denied. G. L. c. 59, § 64.

On April 28, 1978, CHMC appealed the denials to the board under the formal procedure provided by G. L. c. 58A, § 7, and pursuant to Rule 4 of the Rules of the Appellate Tax Board (1982). CHMC's petitions included three grounds of appeal: (1) that it was a charitable organization within the meaning of G. L. c. 59, § 5, Third, and thus was entitled to a statutory exemption from taxation; (2) that the property was overvalued, disproportionately assessed, and assessed in excess of its fair cash value; and (3) that taxation of the property violated certain provisions of the United States and Massachusetts Constitutions.[5] The assessors did not file answers to CHMC's petitions to the board.

The two appeals were heard on November 21, 1979. Upon CHMC's waiver of its claims of overvaluation, the board took under advisement the assessors' oral motion to dismiss both appeals for lack of subject matter jurisdiction over the portion of the petitions relating to a charitable exemption under G. L. c. 59, § 5, Third.[6] The parties continued to negotiate in an attempt to reach a settlement and on January 18, 1980, counsel for CHMC informed the board by letter that the parties had been unable to resolve the dispute. At the same time, CHMC submitted five requests for rulings of law and a memorandum in support of the board's jurisdiction to determine the merits of the appeals. The board rendered a decision on January 22, 1982, allowing the assessors' motion to dismiss the appeals. CHMC

---

[5] CHMC's constitutional claims apparently were not prosecuted before the board and are not raised in the appeals before us.

[6] The record before us does not include a transcript of the proceedings before the board. In its denial of CHMC's motion for reconsideration of its decision, which is included in the record, the board, on its own motion, responded to CHMC's requests for rulings of law. In this response the board stated that CHMC stipulated at the hearing that it would not contest valuation of either of the parcels. CHMC does not dispute this assertion.

appealed the decision, but did not request findings of fact within ten days of the decision, as required by G. L. c. 58A, § 13, and Rule 32 of the Rules of the Appellate Tax Board (1982). CHMC did file a motion for reconsideration of decision in which it argued that its original requests for rulings of law and memorandum in support of the board's jurisdiction had not been considered by the board.[7] This motion was denied on March 18, 1982, and thereafter CHMC filed a statement of the proceedings pursuant to Mass. R. A. P. 8 (c), as appearing in 378 Mass. 932 (1979), and a request for findings of fact and report of the board's March 18, 1982, action under Rule 32 of the Rules of the Appellate Tax Board (1982). By letter dated April 1, 1982, the board informed CHMC that it was not required to respond to these requests as its March 18 action was not a "decision" within the meaning of rule 32, and as CHMC had not requested findings of fact within ten days of its January 22 decision. CHMC's appeals were consolidated and argued together before this court. We remand the case for further proceedings by the board.

The assessors acknowledge that CHMC is a charitable organization and concede that Form 128 was the proper vehicle for an application for abatement of taxes. They argue, however, that the board lacked jurisdiction under G. L. c. 58A, § 6, over appeals claiming G. L. c. 59, § 5, Third, exemptions for fiscal years preceding 1979, see *Assessors of Saugus* v. *Baumann,* 370 Mass. 36, 37 (1976),[8]

---

[7] CHMC asserted that its counsel had been requested by the clerk's office of the board in November, 1981, to refile certain exhibits, not including the requests and memorandum, filed at the hearing and misplaced in the board's files. This may explain the board's extraordinary delay of over two years in rendering a decision on the appeals. On appeal to this court, CHMC further asserts that its counsel was not notified of the board's decision until after the ten-day period had elapsed during which a request for findings can be filed.

[8] The assessors maintain that G. L. c. 58A, § 6, confers no jurisdiction on the board over claims involving charitable exemptions, and that such jurisdiction was not created by the Legislature until G. L. c. 59, § 5B, inserted by St. 1977, c. 992, § 5, applicable to fiscal years beginning July 1,

and that CHMC's failure to file by March 1, 1977, the list of exempt property, statements of receipts and expenditures, prescribed by G. L. c. 59, § 5, Third, and § 29, was "a jurisdictional defect which render[ed] the assessor[s] powerless to exempt the property." See *Sudbury* v. *Commissioner of Corps. & Taxation,* 366 Mass. 558, 563 (1974); *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc.,* 355 Mass. 610 (1969); *Assessors of Boston* v. *Suffolk Law School,* 295 Mass. 489, 492 (1936).[9] The assessors concede that if CHMC had fully complied with the statutory prerequisites for seeking an exemption and had been invalidly assessed despite such compliance, abatement would have been a proper remedy under *Assessors of Everett* v. *General Elec. Co.,* 330 Mass. 464 (1953) (board had jurisdiction, in appeal from abatement proceedings, to abate invalid tax on machinery owned by the United States), *Trustees of Thayer Academy* v. *Assessors of Braintree,* 232 Mass. 402 (1919) (educational institution which filed an improperly verified list of property and estimated its entire value did not wilfully omit requirements and was entitled to an exemption by abatement), and *Milford Water Co.* v. *Hopkinton,* 192

1978. Section 5B provides in material part: "Any person . . . aggrieved by a determination of the board of assessors as to the eligibility or non-eligibility of a corporation or trust for the exemption granted pursuant to the clause Third of section five may appeal therefrom by filing a petition with the clerk of the appellate tax board in accordance with the provisions of section seven of chapter fifty-eight A within three months of said determination." We take the assessors' argument to mean that prior to the enactment of G. L. c. 59, § 5B, the board lacked jurisdiction over a direct appeal from the denial of an exemption, where no proper application for abatement was made to the assessors.

[9] The assessors also appear to argue that CHMC failed to comply with filing requirements under St. 1980, c. 560, a special statute enacted to permit abatement of taxes paid by charitable organizations between 1969 and 1980, provided such organizations would have been granted an exemption but for failure to file the descriptive list required by G. L. c. 59, § 29, and provided the list was filed by November 1, 1980, and "all other requirements for such exemption [were] complied with." Since St. 1980, c. 560, became effective over two years after CHMC filed its appeals to the board and eight months after the board's hearing, CHMC cannot be faulted for failure, if any, to comply with any special requirements of that statute that may exist.

Mass. 491 (1906) (public service corporation empowered to take land entitled to exemption by abatement). The assessors contend, however, that G. L. c. 59, § 59, affords no basis to abate a validly assessed tax, i.e., a tax levied after the failure of an organization to file properly for an exemption, on the ground that the organization is eligible for a charitable exemption.

CHMC argues persuasively that the board has jurisdiction to consider an appeal from a proceeding in abatement on the ground of charitable exemption. See *Trustees of Smith College* v. *Assessors of Whately*, 385 Mass. 767, 768 (1982); *Nature Church* v. *Assessors of Belchertown*, 384 Mass. 811 (1981); *Meadowbrooke Day Care Center, Inc.* v. *Assessors of Lowell*, 374 Mass. 509 (1978); *Mary C. Wheeler School, Inc.* v. *Assessors of Seekonk*, 368 Mass. 344 (1975); *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc., supra*; *Norwood* v. *Norwood Civic Ass'n*, 340 Mass. 518 (1960). See also *Small Business Admin.* v. *Assessors of Falmouth*, 345 Mass. 294 (1963); *Assessors of Boston* v. *Boston Elevated Ry.*, 320 Mass. 588 (1947). CHMC concedes that "a charitable organization which fails to file the list, statements and affidavit in accordance with G. L. c. 59, § 5, Cl. Third (b), is foreclosed from receiving an exemption." In an argument made considerably clearer by its reply brief, CHMC urges that the question whether such filing was properly made is a substantive rather than a jurisdictional issue.

We have never decided the precise question whether the filing with the assessors of the descriptive list, statement, and certification required by G. L. c. 59, § 5, Third (*b*), and G. L. c. 59, § 29, is a jurisdictional prerequisite to action by the assessors and review by the board. We hold now that the clear terms of the statute compel the conclusion that this requirement is jurisdictional. Chapter 59, § 5, Third (*b*), expressly provided that a charitable organization "shall not be exempt for any year in which it omits to bring in to the assessors the list and statement required by section twenty-nine and a certification under oath that the report

for such year required by section eight F of chapter twelve has been filed with the division of public charities in the department of the attorney general."[10]  From time to time the Legislature has adopted provisions to enable charitable organizations, failing to file the list but otherwise eligible for exemptions in certain prior years, to make the appropriate filing and to seek exemption through abatement proceedings.  See note 9, *supra*; St. 1974, c. 656 (emergency act permitting application for abatement under G. L. c. 59, § 59, for fiscal years 1972 through 1975, provided list of property filed by October 1, 1974, and "all other requirements for such exemption are complied with"); St. 1973, c. 479 (same provision with respect to fiscal years 1971 through 1973).  In an appeal not arising under such special statutes, such as the ones before us, we think that a timely filing of the list, statement, and certification with the assessors is a prerequisite to obtaining an abatement. "Nothing in this act shall be construed as waiving the requirement that [charitable] organizations shall file said list pursuant to said section twenty-nine in March, nineteen hundred and seventy-five, to be eligible for tax abatements for the year commencing July first, nineteen hundred and seventy-five."  St. 1974, c. 656, third par.

Exemption from taxation by statute is to be strictly construed.  *Assessors of Wilmington* v. *Avco Corp.*, 357 Mass. 704, 706 (1970).  *Norwood* v. *Norwood Civic Ass'n, supra* at 525.  We have held that "[s]ince the remedy of abatement is created by statute, the board lacks jurisdiction over the subject matter of proceedings in which this remedy is sought where those proceedings are commenced at a later time or prosecuted in a different manner from that prescribed by statute."  *Nature Church* v. *Assessors of Belchertown,* 384 Mass. 811, 812 (1981), citing *Assessors of Boston*

---

[10] In 1977, G. L. c. 59, § 5, Third (*b*), was amended to read that a charitable organization "shall not be exempt for any year in which it omits to bring in to the assessors the list, statements and affidavit . . . and a true copy of the report for such year."  St. 1977, c. 992, § 2.

388 Mass. 832                                    839

Children's Hospital Medical Center v. Board of Assessors of Boston.

v. *Suffolk Law School,* 295 Mass. 489, 495 (1936). See *Roda Realty Trust* v. *Assessors of Belmont,* 385 Mass. 493, 495 (1982) (board has no jurisdiction over appeal from denial of abatement if application for abatement is not timely under G. L. c. 59, § 59); *MacDonald* v. *Assessors of Mashpee,* 381 Mass. 724, 725 (1980) (use of approved form for application for abatement is essential to jurisdiction of assessors and of board, and omission of description of property pursuant to G. L. c. 59, § 61, would be fatal to application); *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth,* 368 Mass. 745, 747-748 (1975) (board may not decide appeal on the merits if taxpayer's right to apply to assessors for abatement has been lost through failure to follow statutory procedures). See also *Aetna Life Ins. Co.* v. *Commissioner of Corps. & Taxation,* 323 Mass. 657, 659-661 (1949); *Central Nat'l Bank* v. *Lynn,* 259 Mass. 1, 3-4 (1927), cert. denied, 280 U.S. 516 (1929). Compare *Assessors of Quincy* v. *Boston Consol. Gas Co.,* 309 Mass. 60 (1941) (slight inaccuracies in property list prescribed by Commissioner, and failure to state value of enumerated property, did not deprive board of jurisdiction to hear taxpayer's appeal); *Dexter* v. *Beverly,* 249 Mass. 167 (1924); *Trustees of Thayer Academy* v. *Assessors of Braintree,* 232 Mass. 402 (1919) (jurisdiction depended on determinations of good faith delay and wilful omission under then existing statute).[11]

---

[11]As we deem the provisions of G. L. c. 59, § 5, Third (*b*), to be jurisdictional requirements, we cannot accept CHMC's argument that its application for abatement was preserved by its providing, pursuant to G. L. c. 59, §§ 61 and 64, what CHMC characterizes as a "sufficient description" of the real estate for which an abatement is sought. See *Assessors of Brookline* v. *Prudential Ins. Co.,* 310 Mass. 300, 306-307 (1941). But see *Jacob's Pillow Dance Festival, Inc.* v. *Assessors of Becket,* 320 Mass. 311, 314 (1946). In addition to a list of property, G. L. c. 59, § 5, Third (*b*), required a statement of receipts and expenditures, and a certification under oath of the filing of a report with the office of the Attorney General pursuant to G. L. c. 12, § 8F. The statute clearly precluded an exemption "for any year in which [a charitable organization] omits to bring in to the assessors the list and statement required by section twenty-nine and a certification under oath." For this reason, CHMC's contention that the as-

Our conclusion that the filing provisions of G. L. c. 59, § 5, Third (*b*), are jurisdictional requirements for a review of a denial of a charitable exemption does not dispose of the present appeals. CHMC asserts that it filed the requisite documents with the assessors on the appropriate form (Form 3 ABC), as required, before March 1, 1977. The assessors agree that Form 3 ABC is its approved form for filing the property list, statement, and certification required by G. L. c. 59, § 5, Third (*b*), and § 29. They argue to this court that CHMC did not file the form and further, that there is no showing that the completed Form 3 ABC, a copy of which is appended to CHMC's reply brief, was ever submitted to the board by CHMC. Our review of the record supports the latter contention. CHMC counters, however, that the sole basis of the assessors' oral motion to dismiss was CHMC's failure to submit, not Form 3 ABC, but one entitled "Application for Statutory Exemption" (Form 1B-3), which on its face had to be filed before October 1, 1977.[12] In this respect, the record supports CHMC's contention. It is therefore unclear to us why the board, in responding on its own motion to CHMC's requests for rulings of law, and in the apparent absence of any claim by either party respecting the filing of Form 3 ABC, stated that CHMC failed to file the form.

The jurisdictional issue of whether Form 3 ABC was filed, properly or at all, may of course be raised by the assessors at

---

sessors could have sought from it more information through G. L. c. 59, § 38B (information to determine actual value of the property) and § 61A (certain discovery available to assessors), is not here relevant. The assessors could not waive the explicit filing requirements of G. L. c. 59, § 5, Third (*b*). *Assessors of Boston* v. *Suffolk Law School*, 295 Mass. 489, 494 (1936).

For the same reasons, we do not find our decision in *Assessors of Boston* v. *Boston Elevated Ry.*, 320 Mass. 588 (1947), analogous to the present situation. In *Boston Elevated Ry.*, we held that real estate acquired or which could have been acquired by eminent domain, and which was committed to a public use, was impliedly exempt from local taxation and was not affected by G. L. c. 59, § 2, providing that all real property be subject to taxation unless expressly exempted.

[12] The assessors have appended a blank Form 1B-3 to their brief.

any time. See *Assessors of Boston* v. *Suffolk Law School*, 295 Mass. 489, 495 (1936).[13] Moreover, "[t]he burden of establishing facts essential to the jurisdiction of the board of tax appeals was on the taxpayer who took the appeal from the decision of the board of assessors." *Id.* at 496. But where, as here, a ground of objection to jurisdiction now advanced imports a factual dispute which each party contends was not presented by the other to the board, we cannot be certain that that ground was considered by the board, despite its response to requests for rulings of law, issued two months after its decision was rendered, stating that Form 3 ABC was not filed. See *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc.*, 355 Mass. 610, 618-619 (1969) (where the board dismissed an appeal for want of jurisdiction due to late filing for abatement, and record did not show when tax bills were sent out, the case was remanded for an explicit finding. We "assume[d] that [the taxpayer] had the burden of proving . . . at least if the issue was raised before the board, that it had seasonably filed its application . . . . The issue was raised, at best obscurely . . . by an averment that [the taxpayer] 'failed to follow proper statutory procedure for obtaining an exemption . . . to obtain an abatement.' In the somewhat confused state of the pleadings, we doubt that it was apparent on the face of the record that the board lacked jurisdiction because of late filing of the application for abatement"). Compare *Cohen* v. *Assessors of Boston*, 344 Mass. 268, 271 (1962) (where taxpayer's petition alleged that application for abatement was filed with assessors, and assessors alleged in a plea in bar that no application had been filed, "[t]he board's decision, which was a general finding, imported a finding of all the subsidiary facts necessary to support it. . . . One such fact is that no application for abatement had been filed. The appellant can derive no help from a docu-

---

[13] The question whether the Commissioner could or did approve, pursuant to G. L. c. 58, § 31, a form other than Form 3 ABC is not presented by this appeal. Cf. *Assessors of Boston* v. *Suffolk Law School, supra.*

ment improperly included in the record . . . which his brief states is a photostatic copy of an abatement petition 'offered in evidence'"); *Assessors of Boston* v. *Suffolk Law School,* 295 Mass. 489, 494 (1936) (where purported application for abatement, on ·plain sheet of paper, was before board, board improperly ruled that assessors had waived question of proper form by their conduct and in the pleadings, record showed "clear noncompliance with [the requirements of the statute]," and board lacked jurisdiction to hear appeal).

The present record indicates that CHMC met the oral objection to the board's jurisdiction, that it had not filed an "Application for Statutory Exemption" on Form 1B-3, by asserting that an application for abatement pursuant to G. L. c. 59, § 59, on a form approved by the Commissioner for that purpose, was sufficient to permit the board to exercise jurisdiction over the appeals. The record does not show that any question of filing Form 3 ABC was presented until after the board had rendered its decision. See *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc., supra* at 618 (taxpayer averred that board's advice that application contained "an apparent jurisdictional defect" was given "after the close of the evidence"). CHMC, in effect, argued to the board, by requests for rulings and a memorandum in support of the board's jurisdiction, the question whether the failure to file Form 1B-3 precluded the board's jurisdiction to hear an appeal arising from an otherwise proper application for abatement. In this respect, it appears from the scanty record that CHMC attempted to address the only jurisdictional issue then presented to the board. It is the assessors, and not CHMC, who appear to have enlarged upon the jurisdictional question on appeal to this court. Compare *Roda Realty Trust* v. *Assessors of Belmont,* 385 Mass. 493, 495 (1982) (taxpayer who did not request evidentiary hearing and who was "content to have the board resolve the jurisdictional question on the basis of . . . affidavits, oral argument at a motion hearing, and the taxpayer's own brief" could not raise the issue of an evidentiary hearing for the first time in this court). We think that, like the

388 Mass. 832                                                    843

Children's Hospital Medical Center v. Board of Assessors of Boston.

nonprofit corporation in *Pioneer Valley Academy, Inc.,*
*supra* at 619, CHMC "should not be deprived (by confused
pleadings and consequent failure of proof on an issue, prob-
ably susceptible of simple proof, not clearly presented by
the pleadings)" of an exemption to which it might have been
entitled in the year in which it sought an abatement. On
remand, the board is to reopen the hearing and to make a
finding whether CHMC seasonably filed Form 3 ABC with
the assessors. If that finding is in the negative, the board is
to reaffirm its decision dismissing CHMC's appeals for lack
of jurisdiction.

Another aspect of this case requires that it be remanded to
the board on an additional ground. It is not disputed by the
parties that the basis of the assessors' motion to dismiss the
appeals was CHMC's failure to submit to the assessors an
application for statutory exemption on Form 1B-3. It is to
be assumed that the board, in allowing the assessors' mo-
tion, concluded that this failure would deprive it of jurisdic-
tion over the appeals. Indeed, the board's later response to
CHMC's requests for rulings suggests that it deems the filing
of both Form 3 ABC and Form 1B-3 essential to its jurisdic-
tion.[14] It is not clear from the assessors' argument on ap-
peal, however, that the necessity of filing Form 1B-3
derives, as does that of Form 3 ABC, from the statutory re-
quirements of G. L. c. 59, § 5, Third, and § 29. The asses-
sors urge us that the filing of Form 1B-3 is mandated by

---

[14] In its response the board states, "Where, as here, the appellant seeks
an exemption under G. L. c. 59, § 5, cl. 3, the claim for exemption must
be made on a form of Application for Statutory Exemption approved by
the Commissioner of Corporations & Taxation (Form 1B-3, Clause 3),
filed with the Assessors, together with Form 3 ABC and a certification
under oath that the report for the year in question required by G. L. c. 12,
§ 8F has been filed with the division of public charities in the department
of the attorney general. See said c. 59, § 5, cl. 3 (b), as in effect in the per-
tinent year. . . .

"In the instant appeals, the appellant failed to file said application for
Statutory Exemption, Form 3 ABC, and Certification, wherefore, the
Board allowed appellee's Motion to Dismiss for lack of jurisdiction to hear
the appeal from the refusal of the appellee to grant a charitable exemption
under said G. L. c. 59, § 5, cl. 3."

St. 1980, c. 560, which was enacted nearly three years after CHMC filed its applications for abatement in this case. See note 9, *supra.* CHMC contends that, in the absence of further or contrary directions in the statute and on the tax bill concerning application for exemptions under § 5, Third, the only statutory condition of obtaining an abatement is found in G. L. c. 59, § 59, which requires a person aggrieved by a tax to file a timely application on a form approved by the Commissioner (here Form 128).

Neither the board, which made no findings in its decision, nor the assessors, arguing that the "necessary form (Form 1B-3 . . .) has been prescribed by the Commissioner of Revenue, [who] can certainly require the taxpayer to supply the information necessary to show that the qualifications listed in Clause Third are met," have demonstrated how the information solicited by Form 1B-3 adds to that which is solicited by Form 3 ABC in the sense that such information is required by G. L. c. 59, § 5, Third. "The commissioner could not under the guise of approving a form for an application impose upon the taxpayer an obligation to furnish information not required by the statute expressly or by implication." *Assessors of Brookline* v. *Prudential Ins. Co.,* 310 Mass. 300, 308 (1941). See *MacDonald* v. *Assessors of Mashpee,* 381 Mass. 724, 725 (1980) ("We have never held . . . that an application for abatement must contain more information than is required by statute").[15] On remand, the board is to determine, by the taking of evi-

---

[15] On this point, we note that Form 1B-3, which, unlike Form 3 ABC, bears a notation of approval by the Commissioner appears to be due on October 1 of the year to which the tax relates, or six months after the due date of Form 3 ABC. A portion of the printed Form 3 ABC refers the claimant to G. L. c. 59, § 86 (assessors are required to forward to the Commissioner, by July 1, lists and statements filed through Form 3 ABC and a statement showing the whole and categorized "amount of exempted property entered upon the valuation lists" in accordance with G. L. c. 59, § 51). It is unclear to us whether this time frame contemplates that the assessors should, upon forwarding a claimant's list and statement to the Commissioner, communicate in some fashion to the claimant the status of his claim, or whether the burden should be on the claimant to make fur-

dence if appropriate, in what respects, if any, the filing of
Form 1B-3 is required by G. L. c. 59, § 5, Third, so as to
make its filing an element of the jurisdiction of the assessors
to grant an exemption and of the board to review a decision
of the assessors.

The cases are remanded to the board for further proceed-
ings consistent with this opinion.

*So ordered.*

---

ther application, through Form 1B-3, up to three months after the as-
sessors have entered exempted property on the valuation lists.

We recognize too that Form 1B-3 appears to be partially addressed to
qualifications for exemption set forth in G. L. c. 59, § 5, Third (*a*). See
note 2, *supra*. The assessors have not argued the specific relevance of that
provision of the statute in this appeal. Nor does the board appear to have
relied on that provision in its decision. See note 14, *supra*. We therefore
reserve any question with respect to G. L. c. 59, § 5, Third (*a*).