## WILLIAM B. RICE EVENTIDE HOME, INC. *vs.* BOARD OF ASSESSORS OF QUINCY.

No. 06-P-1440.

Suffolk. May 1, 2007. - August 27, 2007.

Present: RAPOZA, C.J., CYPHER, & KANTROWITZ, JJ.

*Charity. Taxation,* Real estate tax: charity, Real estate tax: abatement, Appellate Tax Board: jurisdiction.

This court concluded that while the date that starts the period when a charitable organization may appeal directly to the Appellate Tax Board pursuant to G. L. c. 59, § 5B, to challenge a determination as to the organization's eligibility for exemption from real estate taxation, ordinarily will be the date a city or town's board of assessors mailed the tax bills for a particular fiscal year to the community at large, in some circumstances, such as the issuance of an omitted tax bill, the presumptive date for the commencement of the appeal period is the date the tax bill referencing the property for which the exemption is claimed was sent to the taxpayer. [872-876]

The Appellate Tax Board had jurisdiction under G. L. c. 59, § 5B, to hear the merits of a direct appeal by a tax-exempt charitable organization of a bill that it received for omitted real estate tax, despite the fact that the organization had applied to the local board of assessors for abatement under G. L. c. 59, § 59, but had not paid the tax due so as to preserve its right to appeal from the constructive denial of that application, where the tax bill at issue was internally inconsistent and ambiguous on its face regarding the organization's tax status, such that the constructive denial of the organization's abatement application constituted the first clear determination that it was not tax exempt, and thus, the organization's filing of its appeal under § 5B within three months of that constructive denial was timely. [876-877]

APPEAL from a decision of the Appellate Tax Board.

*Paul N. Barbadoro* for the taxpayer.

*Robert Quinn* for board of assessors of Quincy.

KANTROWITZ, J. On June 14, 2004, the William B. Rice Eventide Home, Inc. (Eventide), a nursing facility and qualified charitable organization, entered the tax "twilight zone." On that date, it received its first property tax bill in the nearly eighty

years of its existence, ordering it to pay $105,992.81 for fiscal year 2004. One half of that amount, $52,996.41, was due February 2, 2004 (as noted on the bill, that was also the cutoff date to apply for an abatement); the remainder being due on May 3, 2004.

That Eventide presumptively was liable for a property tax it never had to pay in its history was disconcerting enough; that the payments were overdue when the bill was received added to its confusion, as did the notice on the bill that the period to appeal had ended in February. Another notation on the bill, that identified Eventide as "Ex-Char.Org," an exempt charitable organization, was even more confounding.

Eventide contacted the board of assessors of Quincy (assessors), and after speaking with them, filed an application for abatement under G. L. c. 59, § 59, which was ultimately denied.[1] Eventide appealed to the Appellate Tax Board (Board), which dismissed the appeal on the ground that it lacked jurisdiction.

On appeal, Eventide argues that, as a charitable organization, it was procedurally unable to pursue a direct appeal to the Board and that it should be able to proceed with its appeal from the denial of its abatement request. We reverse.[2]

*Background.* As presently material, Eventide, which qualifies as a charitable organization under 26 U.S.C. § 501(c)(3) (2000) and under G. L. c. 180, operated a sixty-bed skilled nursing facility on its property located at 215 Adams Street in Quincy during fiscal year 2004.[3] For fiscal year 2004, the assessors reversed their long-standing treatment of the property as tax

[1]Despite the adverse ruling against it, Eventide is still treated by the assessors as a charitable nonprofit organization for purposes of excise tax and licensing fees. Moreover, the Appellate Tax Board (Board) concluded that Eventide, for fiscal year 2005, was entitled to a charitable exemption for the same property that is the subject of this appeal.

[2]The real estate taxes on this property for fiscal year 2005 and upon two other combined parcels for both fiscal years 2004 and 2005, tried below, are not presently at issue.

[3]Most of Eventide's residents were in their nineties with some over 100 years of age. While the residents were primarily from Quincy, residents also came from other communities. Eventide was open to most, if not all, individuals that applied, and there were no selection requirements, financial or otherwise, that affected an individual's admission, so long as their medical needs could be met. Eventide's residents were not capable of living independently, and its staff

exempt, and on or about June 14, 2004, Eventide received the real estate tax bill ($105,992.81) that is the subject of this appeal. The bill indicated it was an "omitted" tax bill[4] and stated that the first payment was due four months earlier, on February 2, 2004.[5] However, the bill still described Eventide as an "Ex-Char.Org.," which apparently means "Exempt Charitable Organization." Subject to other requirements, a charitable organization is exempt from paying taxes on real estate it owns or occupies for purposes for which it was organized. See G. L. c. 59, § 5, Third.

After making inquiry, Eventide filed an application for abatement with the assessors on or about July 15, 2004. When the assessors did not respond, the application was deemed denied on October 15, 2004.[6] On November 26, 2004, Eventide appealed to the Board, and as of September 13, 2005, when the

provided assistance with daily living activities, as well as enhanced services, such as discussion groups, musical programs, and games to stimulate the residents, because such services improved the quality of their lives and resulted in fewer hospitalizations. From October 1, 2003, through June 30, 2004, when the industry average for hospitalizations for preventable conditions per facility was 4.63, Eventide had zero hospitalizations. Eventide also provided and hosted many community outreach programs about elder issues, including creating and distributing resource guides to Quincy residents over the age of sixty-five, at no cost to the community. For fiscal years 2004 and 2005, Eventide operated at a loss of $701,520 and $255,516, respectively.

[4]"If any parcel of real property . . . has been unintentionally omitted from the annual assessment of taxes due to clerical or data processing error or other good faith reason, the assessors shall in accordance with such rules, regulations and guidelines as the commissioner may prescribe, assess such person for such property. . . ." G. L. c. 59, § 75, as inserted by St. 1989, c. 398, § 1. Eventide argues that "this bill was not the result of a clerical error, but rather the tax was issued as a result of the [assessors] deciding to review the exempt status of the non-profit nursing homes within the City." See note 16, *infra.*

Although the issue was addressed by neither Eventide nor the Board, the late bill may not have been an "omitted" one, but rather an "incorrect" bill under G. L. c. 59, § 76, as inserted by St. 1989, c. 398, § 2, which provides: "If any property subject to taxation has been unintentionally valued or classified in an incorrect manner due to clerical or data processing error or other good faith reason, the assessors shall revise its valuation or classification and shall assess any additional taxes resulting from such revision in the manner and within the time provided by section seventy-five and subject to its provisions." Nonetheless, the specific classification of the late tax bill does not affect our decision.

[5]The assessors mailed the fiscal year 2004 tax bills on or about December 30, 2003, but, as we have noted, did not issue a bill to Eventide until June 14, 2004.

[6]"Whenever a board of assessors, before which an application in writing

Board held a hearing on the matter, Eventide had not paid the assessment. As such, the Board held that it lacked jurisdiction over Eventide's fiscal year 2004 appeal because of Eventide's failure to pay the tax assessed in a timely fashion, a jurisdictional defect under G. L. c. 59, § 64.[7] Eventide then appealed to this court.[8]

*Law.* General Laws c. 59, § 5, Third (Clause Third), as inserted by St. 1957, c. 500, provides a tax exemption for "real estate owned by or held in trust for a charitable organization and occupied by it or its officers for the purposes for which it is organized." An organization seeking an exemption must file documentation as to its tax-exempt status with a city or town's board of assessors as required by G. L. c. 59, § 29.[9] Ordinarily, the local board of assessors will review the filings and determine whether to send an organization a tax bill. Upon receiving a tax bill for real estate, a person who claims that the subject property is exempt under Clause Third generally has two options: (1) appeal to the local board of assessors for an abatement pursuant to G. L. c. 59, § 59; or (2) appeal directly to the Board pursuant to G. L. c. 59, § 5B.

Under the first option, G. L. c. 59, § 59, a person who receives a tax bill when a city or town's board of assessors mail the fiscal year tax bills to the community must apply for an abatement on or before the last day of the first installment pay-

for the abatement of a tax is or shall be pending, fails to act upon said application, except with the written consent of the applicant, prior to the expiration of three months from the date of filing of such application it shall then be deemed to be denied and the assessors shall have no further authority to act thereon . . . ." G. L. c. 59, § 64, as amended by St. 1938, c. 478, § 1.

[7]The assessors did not challenge the Board's jurisdiction to hear the appeal, but "[t]he [B]oard was, of course, correct in observing that jurisdiction is fundamental and cannot be ignored or waived." *Massachusetts Inst. of Technology* v. *Assessors of Cambridge*, 422 Mass. 447, 452 (1996).

[8]The assessors did not submit a brief. Counsel for the assessors, however, did appear and was permitted, in the exercise of our discretion, to present oral argument.

[9]In addition, a charitable organization seeking exemption must timely file certain documentation under G. L. c. 12, § 8F, with the division of public charities in the Attorney General's office. See G. L. c. 59, § 5, Third. See also *Children's Hosp. Med. Center* v. *Assessors of Boston*, 388 Mass. 832, 837 (1983), *S.C.*, 393 Mass. 266 (1984). Eventide satisfied both filing requirements for fiscal year 2004.

ment, without incurring interest. However, "a person aggrieved by a tax assessed upon him under section seventy-five [omitted bill] or section seventy-six [incorrect bill] or reassessed upon him under section seventy-seven may apply for such abatement at any time within three months after the bill or notice of such assessment or reassessment is first sent to him." G. L. c. 59, § 59, as amended through St. 1963, c. 125.

Thereafter, if the application for abatement is denied, the person may, within three months of such denial, appeal therefrom to the Board pursuant to G. L. c. 59, §§ 64 and 65. As a condition precedent for the Board's jurisdiction to hear the appeal, the person must first pay the specified sum of the assessed tax. G. L. c. 59, §§ 64, 65.[10]

Under the second option, G. L. c. 59, § 5B, as inserted by St. 1977, c. 992, § 3, the Legislature has carved out a direct route of appeal to the Board for any "person"[11] claiming that it is exempt under Clause Third as a charitable organization, or for any competitor of the charitable organization challenging the eligibility of such person:

> "Any person of a city or town aggrieved by a determi-
> nation of the board of assessors as to the eligibility or
> noneligibility of a corporation or trust for the exemption
> granted pursuant to the clause Third of section five may
> appeal therefrom by filing a petition with the clerk of the
> appellate tax board in accordance with the provisions of

---

[10] "[F]or the purposes of this section a sum not less than the average of the tax assessed, reduced by abatements, if any, for the three years next preceding the year of assessment may be deemed to be the tax due, provided that a year in which no tax was due shall not be used in computing such sum and *if no tax was due in any of the three next three preceding years, the sum shall be the full amount of said tax due*, but the provisions of said section fifty-seven of said chapter fifty-nine shall apply to the amount of the tax deemed to be due and the payment of said sum without incurring any interest charges on any part thereof shall be deemed to be the payment of the tax" (emphasis added). G. L. c. 59, § 64, as amended through St. 1982, c. 653, § 6. Here, because Eventide had never been assessed nor paid a tax in the past, § 64 required it to pay the full amount of the tax due. But see note 13, *infra*.

[11] "As used in this section the term 'person' shall mean the corporation or trust applying for the exemption or an individual, corporation, or trust engaged in a business activity in direct competition with an activity conducted by the charitable corporation or trust." G. L. c. 59, § 5B, as inserted by St. 1977, c. 992, § 3.

section seven of chapter fifty-eight A within three months of said determination."

Thus, an entity claiming exemption by reason of its status as a charitable organization under Clause Third may apply directly to the Board, without first applying to a local board of assessors for an abatement, and without paying the assessed tax due. Not having to pay the tax in advance would appear to make this route the preferable one. An appeal to the Board under § 5B must be filed within three months of the "determination" of the local board of assessors as to an entity's exemption as a charitable organization. What constitutes a "determination" under § 5B is not defined in the statute and has not been construed by an appellate court.

The Board, however, has previously construed the term, and it is this construction, upon which Eventide relied, that forms the basis for this appeal. In *Trustees of Reservations* v. *Assessors of Windsor*, 14 Mass. App. Tax Bd. Rep. 22, 27-30 (1991) (*Trustees*), the Board held that the term "determination" in § 5B referred to the date when a local board of assessors mailed its fiscal year tax bills, not any subsequent date when an individual determination is made as to a particular organization. The rationale for this position was to allow competitors of an organization a means to easily determine and challenge that organization's eligibility as a charitable organization and for a Clause Third exemption. *Id.* at 28-29. As such, the Board in *Trustees* concluded that such an interpretation was needed to put these competitors on sufficient notice, otherwise it "would have one meaning for . . . charitable organizations [appealing their own determination] and a different meaning for their competitors." *Id.* at 28. "A construction of [§] 5B that the mailing of the tax bills may be the 'determination' for purposes of an appeal by '[a]ny person . . . aggrieved' would likewise relieve both charitable organizations and their competitors from checking regularly with the assessors." *Id.* at 29.

*Discussion.* Eventide found itself in a difficult position. After decades of acceptance as an exempt charitable organization without being assessed or paying real estate taxes, not only did it receive a tax bill for fiscal year 2004, but it received it on or

about June 14, 2004, under the heading "Omitted Bill," nearly six months after the assessors mailed the fiscal year 2004 tax bills to taxpayers. Eventide argued, both to the Board and to this court, that it was without a viable option to appeal this omitted tax.[12]

First, Eventide claimed that it was unable to apply for an abatement under G. L. c. 59, § 59, because the date of the first payment installment, February 2, 2004, had already passed; second, Eventide claimed that it was unable to appeal directly to the Board under G. L. c. 59, § 5B, because it was more than three months since the "determination" date as defined by *Trustees*, *supra*. We will deal with each argument in turn.

Eventide's argument that it was unable to pursue an abatement under G. L. c. 59, § 59, is unavailing. First and foremost, Eventide did indeed apply for an abatement to the assessors. Further, Eventide's reading of the statute is incorrect. It claimed that, because it was sent the bill on June 14, 2004, it was impossible for it to apply for an abatement under § 59 because it would have had to do so on or before February 2, 2004 (the first instalment payment date, as appearing on the bill), which had already passed. See G. L. c. 59, § 59.

Here, however, Eventide received an omitted tax bill, see G. L. c. 59, § 75, which was subject to a different abatement application deadline, specifically three months from the date the omitted bill was sent. See G. L. c. 59, § 59. Eventide, having been sent the omitted bill on June 14, filed its abatement application on July 15, well within the three-month period.

Eventide's main concern appears to be with the subsequent § 64 appellate process; specifically, that as a charitable organization, it was still required to pay the full amount of the

---

[12]According to Eventide, "[a]ssuming the bill was issued by mistake Joyce Haglund, Eventide's administrator, sought clarification from the [assessors], which resulted in Eventide filing an application for statutory exemption with the [assessors] within thirty (30) days." Eventide does not argue that the information received from the assessors resulted in an estoppel claim. See *Corea* v. *Assessors of Bedford*, 384 Mass. 809, 810 (1981) (where it did not appear that statements made by assessors led plaintiffs to rely on date other than that of written denial for purposes of computing time to appeal assessment, assessors were not estopped from asserting that three-month period ran from date of written denial).

tax to be able to appeal. By unsuccessfully applying for an abatement, Eventide was responsible for paying the full amount of the taxes due, $105,992.81, to preserve its right to appeal, but never did.[13] "Since the remedy of abatement is created by statute, the [B]oard lacks jurisdiction over the subject matter of proceedings in which this remedy is sought where those proceedings are commenced at a later time or prosecuted in a different manner from that prescribed by statute." *Nature Church* v. *Assessors of Belchertown*, 384 Mass. 811, 812 (1981). See *Children's Hosp. Med. Center* v. *Assessors of Boston*, 388 Mass. 832, 838 (1983), *S.C.*, 393 Mass. 266 (1984). Accordingly, if this matter were to be construed as an appeal pursuant to § 64, the Board's decision would stand.

However, while any person, including a charitable organization, may seek to abate a tax through § 59, and may subsequently appeal via §§ 64 and 65, see *Children's Hosp. Med. Center* v. *Assessors of Boston*, 393 Mass. 266, 267 (1984) (exemption is proper basis for abatement under § 59), charitable organizations, like Eventide, or competitors thereof, have an alternative option, the unique benefit of availing themselves of G. L. c. 59, § 5B, which allows a direct appeal to the Board without paying any portion of the assessed tax.[14]

Eventide argues that it felt compelled to take the § 59 route (requiring prepayment of the tax due), and not that of § 5B, based upon its reading of the decision in *Trustees, supra,* namely, that the "determination" date, commencing the three-month appeal period, was the date the assessors mailed the fiscal year tax bills to taxpayers. *Trustees,* 14 Mass. App. Tax Bd. Rep. at 27-29. Here, as per *Trustees,* the determination date was December 30, 2003, and three months therefrom would have been on or about March 30, 2004. Eventide, which did not

---

[13]Eventide could have sought to be excused from paying at least a portion of the tax due prior to the appeal. See G. L. c. 59, § 65B (allowing person, who has filed appeal from local board of assessors' refusal to abate tax and is unable to pay such tax, to file motion to be excused from a portion of such payment so long as it pays at least one-half of tax due, without incurring interest as so provided).

[14]"This construction relieves charitable organizations of the burden of paying a tax . . . as a condition precedent for obtaining a determination by the Board resulting in no tax being due at all . . . ." *Trustees,* 14 Mass. App. Tax Bd. Rep. at 31 n.7.

receive its bill until June 14, 2004, believed that a § 5B appeal was, thus, not an available option.

In its decision, the Board disagreed, quoting *Samson Foundation Charitable Trust* v. *Assessors of Springfield*, 29 Mass. App. Tax Bd. Rep. 159, 162 (2004) (*Samson*): "The 'determination' of the assessors which the charitable entity appeals under § 5B is the issuance of a tax bill which includes the property which the entity claims is exempt under Clause Third." As such, the Board held that, as the determination date is the date of the issuance of a tax bill which includes the exempt property, Eventide could have filed a § 5B appeal directly to the Board within three months of the assessors' issuance of the "omitted" bill.

The *Samson* language, as quoted, would appear to be a significant shift in the Board's definition of "determination": from the date a local board of assessors mail the fiscal year tax bills to the community at large (*Trustees*) to the date when the individual person is sent his individual tax bill referencing the subject property (*Samson*). *Samson*, however, cannot be read as an intention by the Board to effect such a dramatic shift in the Board's interpretation of the term "determination" for the simple reason that it cites *Trustees* in support of its proposition. Furthermore, as the determination date was not in issue in *Samson*, there was no reason to address its definition, much less dramatically change its meaning.[15] Such a statement, in the context of *Samson*, was merely dictum, not ordinarily a vehicle

---

[15]In *Samson*, the board of assessors of Springfield mailed the tax bills, including that of the plaintiff trust, for fiscal year 2001 on December 29, 2000. The bill stated that the trust was not granted an exemption under Clause Third for its property and that the first payment was due by February 1, 2001. The trust filed an application for abatement on June 29, 2001. As no action was taken on it, the application was thus deemed denied. When the trust filed an appeal with the Board on November 8, 2001, no tax payment had been made. The Board held, among other things, that the trust had failed to satisfy the requirements of G. L. c. 59, § 5B, because it had not appealed directly to the Board within three months of the determination date of December 29, 2000, which the Board defined as "the issuance of a tax bill which includes the property which the entity claims is exempt under Clause Third." *Samson*, 29 Mass. App. Tax Bd. Rep. at 162. The Board also held that it did not have jurisdiction to hear the appeal because the application for abatement had been filed after the date when the first instalment payment was due, see G. L. c. 59, § 59, and because the trust had failed to pay the tax due under G. L.

to dramatically change a definition directly addressed in a previous decision issued less than three years previously. In the circumstances, and given the Board's applicable precedents at the time, it was reasonable for Eventide to conclude that its appellate rights under G. L. c. 59, § 5B, were foreclosed.

The question remains, therefore, as to the proper construction to be given to the term "determination" as it is used in G. L. c. 59, § 5B. As noted earlier, the term is not defined in the statute. In addition, it appears that an ambiguity exists between that section and G. L. c. 59, § 75, the provision covering omitted tax bills. Unlike § 59 (review via an abatement request), which makes specific reference to an omitted bill under § 75, § 5B does not. Section 5B, enacted in 1977, is not part of the original statutory law in this area. It appears that the Legislature failed to relate and expressly cross-reference §§ 5B and 75, and did not account for a situation like the present. "[A]mbiguities in taxing statutes are to be resolved in favor of the taxpayer . . . and all doubts are to be resolved in favor of the taxpayer" (quotations and citations omitted). *Mann* v. *Assessors of Wareham*, 387 Mass. 35, 39 (1982). Compounding the ambiguity in the statute were the decisions of the Board attempting to interpret the term, which interpretation did not take into account the possibility of later issued omitted tax bills under § 75. We hold today that the "determination" date will ordinarily be the date a local board of assessors mail the fiscal year tax bills, but that in some circumstances, such as the issuance of an omitted tax bill, the presumptive date for the commencement of the three-month appeal period under § 5B shall be the date the tax bill referencing the property for which the exemption is claimed is sent to the taxpayer.

For the purposes of this case, however, our inquiry does not end here. Ordinarily a tax bill sent to an entity, purporting to tax it as nonexempt, will suffice as a determination of the entity's nonexempt status for purposes of a § 5B appeal, even where, as here, the entity has been deemed exempt in the past. The tax bill at issue here, however, was internally inconsistent and ambiguous on its face. The bill, as noted earlier, identified Eventide as an exempt charitable organization. It was reasonable, given

c. 59, §§ 64 and 65. *Samson, supra* at 161.

Eventide's long history of tax-exempt status, for it to believe the bill might be in error, in other words, that the assessors had not yet made a determination of Eventide's tax-exempt status. Eventide promptly sought clarification of this point by filing an abatement application with the assessors asserting that it was a tax-exempt charitable organization. The assessors did not respond to the application, which was deemed denied after three months. The constructive denial of Eventide's abatement application constitutes the first clear determination by the assessors that Eventide was not tax exempt. Eventide's appeal to the Board, filed well within three months of that determination, was timely filed under § 5B.

*Conclusion.* Eventide was placed in an untenable position, in an area fraught with peril, and should not be penalized for the reasonable actions it took. In the unique facts presented by this case, we hold that the Board has jurisdiction to hear the merits of the case, and this matter is remanded for further proceedings consistent with this opinion.[16]

*So ordered.*

---

[16]At the end of the hearing before the Board, Eventide asserted that the bill was not a properly omitted one; the hearing officer invited briefs on the issue, which Eventide filed. The assessors did not respond, and the hearing officer did not address the issue in his decision. Before us, see note 4, *supra,* Eventide raises the same issue: that an omitted bill is proper when the taxpayer has been unintentionally omitted "due to clerical or data processing error or other good faith reason." G. L. c. 59, § 75. See G. L. c. 59, § 76. Here, Eventide claims that as the assessors' stated reason for issuing the bill — to review the exempt status of nonprofit nursing homes within Quincy — falls outside of the criteria cited in the statute, the omitted bill was in fact invalid. Given our decision, we need not reach this issue. The Board is, however, free to address it.