422 Mass. 447                                      447

Massachusetts Institute of Technology *v.* Board of Assessors of Cambridge.

MASSACHUSETTS INSTITUTE OF TECHNOLOGY & another[1] *vs.*
BOARD OF ASSESSORS OF CAMBRIDGE.

Suffolk. March 5, 1996. - April 12, 1996.

Present: WILKINS, LYNCH, GREANEY, & FRIED, JJ.

*Taxation,* Appellate Tax Board: jurisdiction; Real estate tax: abatement,
value. *Jurisdiction,* Appellate Tax Board.

The Appellate Tax Board correctly dismissed, for lack of jurisdiction, ap-
plications for the abatement of real estate taxes for fiscal years 1991 and
1992 in connection with a certain parcel of land that had been newly
created from parts of five contiguous parcels, where the board concluded
that the full amount of tax assessed had not been paid for the years in
question as a prerequisite for abatement under G. L. c 59, § 64, and
that the three-year averaging provision of that statute was not applicable
to confer jurisdiction for purposes of an abatement because the subject
parcel had not existed prior to the years in question. [450-454]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Janet Steckel Lundberg (Maria J. Krokidas* with her) for
the plaintiffs.

*Gail S. Gabriel* for the defendants.

GREANEY, J. This appeal arises from a decision by the Ap-
pellate Tax Board (board) dismissing, for lack of jurisdiction,
applications for the abatement of real estate taxes for fiscal
years 1991 and 1992 filed by the taxpayers, Massachusetts
Institute of Technology (M.I.T.) and Kennedy Lofts Associ-
ates, a limited partnership (Kennedy Lofts), in connection
with a parcel of land in Cambridge. M.I.T. and Kennedy
Lofts had filed timely real estate tax abatement applications
for fiscal years 1991 and 1992 with the board of assessors of
Cambridge (assessors) which denied both applications. M.I.T.
and Kennedy Lofts appealed to the board and moved to con-

[1]Kennedy Lofts Associates, a limited partnership.

solidate their 1991 and 1992 appeals with a pending appeal concerning the denial by the assessors of their fiscal year 1990 application for abatement.

The board conducted hearings on the question of its jurisdiction to hear the appeals from fiscal years 1991 and 1992, and it determined that jurisdiction was lacking under G. L. c. 59, § 64 (1994 ed.). The board entered a decision which ordered that the appeals for fiscal years 1991 and 1992 be dismissed, and it proceeded to hear, and grant, an abatement, on the appeal concerning fiscal year 1990. In connection with its order of dismissal, the board (after a proper request) filed findings of fact and a report and opinion. See G. L. c. 58A, § 13 (1994 ed.), and Rule 32 of the Rules of the Appellate Tax Board (1995). The board denied a request for reconsideration, and M.I.T. and Kennedy Lofts appealed to the Appeals Court. We transferred the case to this court on our own motion, and we now affirm the board's order of dismissal.

The background facts are as follows. The property in issue consists of a 74,571 square foot parcel of land located between Green and Franklin Streets in Cambridge and designated as 96-152 Green Street (subject parcel). The land is owned by M.I.T., but was leased by it to Kennedy Lofts in 1989, for the purpose of renovating an old mill building for residential use. When the lease agreement was made final in May, 1989, the parties recorded a plan in the registry of deeds which designated the subject parcel as a single parcel of land.

Prior to the lease agreement, the subject parcel had been dispersed among five separate (but contiguous) parcels. All five of the parcels were owned by M.I.T., but all of them were taxed separately. Of the five, one parcel contained 71,076 square feet (main parcel).[2] The other four parcels were of varying sizes. In reconfiguring the land to accommodate the lease agreement with Kennedy Lofts, M.I.T. took pieces of the other four parcels, amounting to a total of 3,495 square feet, and added that land to the main parcel to create the subject parcel.

When the plan of the newly created subject parcel was re-

[2]The fiscal year 1990 assessment on the main parcel was $64,975.17, and $48,238 was paid in taxes. The board granted an abatement in connection with this assessment and reduced the tax due in 1990 on the main parcel to $36,469.40.

422 Mass. 447                                          449

Massachusetts Institute of Technology *v.* Board of Assessors of Cambridge.

corded, the assessors used it to issue a tax bill which was based on a new assessment of the subject parcel. The first year that taxes were assessed on the subject parcel was fiscal year 1991.[3]

We turn now to the merits. In considering whether it had jurisdiction over the appeals by M.I.T. and Kennedy Lofts for fiscal years 1991 and 1992, the board had to construe and apply the portion of G. L. c. 59, § 64, which confers jurisdiction on the board to hear appeals from real estate tax assessments and bills. That portion of § 64 (with the language pertinent to this appeal italicized) reads as follows:

"A person aggrieved by the refusal of assessors to abate a tax . . . *on a parcel of real estate,* may, within three months after the date of the assessors' decision on an application for abatement as provided in section sixty-three, or within three months after the time when the application for abatement is deemed to be denied as hereinafter provided, appeal therefrom by filing a complaint with the clerk of the county commissioners, or of the board authorized to hear and determine such complaints, for the county where the property taxed lies, and if on hearing the board finds that the property has been overrated and that the complainant has complied with all applicable provisions of law, it shall make a reasonable abatement and an order as to cost; provided, that if the *tax due for the full fiscal year on a parcel of real estate* is more than two thousand dollars, said tax shall not be abated *unless the full amount of said tax due has been paid* without the incurring of any interest charges on any part of said tax pursuant to section fifty-seven of chapter fifty-nine of the General Laws; *and provided further, that for the purposes of this section a sum not less than the average of the tax assessed, reduced by abatements, if any, for the three years next preceding the year of assessment may be deemed to be the tax due,* provided that a year in which no tax was due shall not

[3]The fiscal year 1991 assessment on the subject parcel was $113,200.98, and $55,424 was paid in taxes. The fiscal year 1992 assessment on the subject parcel was $136,468.73, and $77,423 was paid in taxes. The brief for M.I.T. and Kennedy Lofts suggests that the taxpayer (Kennedy Lofts, under the terms of the lease) did not pay the full amount of tax assessed for these two years in anticipation of reliance on the so-called three-year averaging provision that is at issue in this case.

be used in computing such sum and if no tax was due in any of the three next . . . preceding years, the sum shall be the full amount of said tax due, but the provisions of said section fifty-seven of said chapter fifty-nine shall apply to the amount of the tax deemed to be due and the payment of said sum without incurring any interest charges on any part thereof shall be deemed to be the payment of the tax."

There is no dispute that M.I.T. and Kennedy Lofts did not pay the full tax amounts due for fiscal years 1991 and 1992. See note 3, *supra*. M.I.T. and Kennedy Lofts maintained, however, that the board had jurisdiction under the so-called three-year averaging provision (set forth in the last italicized language above) because they had paid an amount equal to the average of the real estate taxes billed for the prior three fiscal years. The board rejected this contention and concluded that the three-year averaging requirement had not been met. The board first pointed out that the portion of § 64 in issue required it to examine the tax assessed on the subject parcel for the three years prior to the last fiscal year that is the subject of the appeal. The board indicated its view that, if there is only a tax due on the subject parcel for one of the three years, the taxpayer had to pay that amount to perfect an appeal. The board also indicated that, if there is no tax due on the subject parcel for any of the three years, then the three-year averaging provision would not apply. According to the board, because the subject parcel did not exist before fiscal year 1991, there was no parcel to which the board could look for determining the average tax over the past three years. The board put its decision in these words: "[T]here was no tax due on the subject parcel for any of the three years prior to fiscal year 1991 since the subject parcel did not exist prior to that fiscal year. . . . [Therefore,] the three-year-average provision was not available to the taxpayer . . . ." The board reached a similar conclusion as to fiscal year 1992, because, for the purposes of determining the three-year average for that year, the subject parcel only existed for one prior year (1991), and it was clear that M.I.T. and Kennedy Lofts had not paid the full amount of tax assessed for that year.

We conclude that the board acted properly in reaching this result. The board was confronted with the problem whether

the three-year averaging provision should be applied to a re-configured parcel of land at all, and, if so, how this logically could be accomplished. The reconfiguration in this case had resulted in a new parcel which had been assembled by combining one existing large parcel with small parts of four other contiguous parcels. The board could consider that there is nothing in the language of the three-year averaging provi-sion which expressly directed it to apply the provision to a re-configured parcel of land that had been assessed and taxed as separate parcels in the past. The board also could consider that there is nothing in the language of the provision which instructs it on the methodology to be used in computing the three-year average on reconfigured land like the subject parcel. The computation issue, as the board observed, would be exceedingly difficult to resolve.[4]

Faced with a problem which did not admit of an efficient

---

[4]The board went on in its opinion to examine possible methods of calculating the three-year average for the subject parcel. M.I.T. and Kennedy Lofts suggested three methods of calculation, all of which the board rejected.

The first method involved the use of expert testimony to value the por-tions of the additional parcels which were added to the main parcel to cre-ate the subject parcel, and then to calculate estimated assessments. The board rejected this method as "impractical and unreliable" because it would require the board "to conduct a separate valuation proceeding involv-ing parcels which were not included in the appeal just to determine whether the requirements for its jurisdiction had been met." The second method involved adding up the total taxes assessed on all five original parcels (including portions of the four parcels which had not become part of the subject parcel), and comparing that sum with the taxes actually paid on the five parcels over the past three years. In rejecting this method, the board noted that "[t]here is nothing in the language of . . . [§] 64 which permits the use of the taxes assessed and paid on parcels which are not the subject of the appeal . . . ." The third method required a preliminary conclusion that, for the purpose of the three-year averaging rule, the subject parcel was equal to the main parcel, because the 3,495 square feet added to the main parcel was a de minimis change to the subject parcel. The board rejected this theory, citing *Boston Five Cent Sav. Bank* v. *Assessors of Bos-ton*, 311 Mass. 415, 416 (1942), for the proposition that § 64 requires strict compliance. The board also pointed out that the de minimis argument furnished it with "no guidance as to where to draw the line."

The board noted that of the various valuation methods proposed, a method proposed by the assessors appeared the least difficult to implement fairly. The assessors suggested that the board consider the assessed tax per square foot of the four parcels contiguous to the subject parcel, allocate taxes for the prior years on this basis, and then determine whether M.I.T.

and practical solution, and in the absence of any clear legislative direction, the board properly could look to, and literally apply, the statutory language of § 64, which states, in fairly straightforward fashion, that the "tax due" "on a parcel of real estate" is the three-year "average of the tax assessed, reduced by abatements." The board's reasoning, summarized above, explains why the application of this language to the subject parcel does not afford M.I.T. and Kennedy Lofts the jurisdictional benefit of the three-year averaging rule. "In reviewing mixed questions of fact and law, the board's expertise in tax matters must be recognized, and its decisions are due 'some deference.' " *Koch* v. *Commissioner of Revenue*, 416 Mass. 540, 555 (1993), quoting *McCarthy* v. *Commissioner of Revenue*, 391 Mass. 630, 632 (1984). *French* v. *Assessors of Boston*, 383 Mass. 481, 482 (1981). In particular, we should respect the board's judgment concerning the feasibility and fairness of alternate proposed methods of property valuation. The board was, of course, correct in observing that jurisdiction is fundamental and cannot be ignored or waived. See *Lenson* v. *Assessors of Brookline*, 395 Mass. 178, 179 (1985).

In concluding that the board acted properly, we have considered, and are not persuaded by, the arguments made by M.I.T. and Kennedy Lofts that the board's application of § 64 is based on a flawed reading of the statutory language at issue. M.I.T. and Kennedy Lofts note that the three-year averaging provision in § 64 refers to the "tax due," but does not expressly mention, in the provision, "a parcel of real estate." Since the latter term is used earlier in § 64 (see italicized language in § 64, quoted above), M.I.T. and Kennedy Lofts maintain that the absence of the term in the actual text of the three-year averaging provision can only mean that the provision applies to parcels which need not be identical. To support this argument, M.I.T. and Kennedy Lofts point to the earlier version of the three-year averaging provision in § 64, which stated that "the amount which

and Kennedy Lofts had satisfied the jurisdictional criterion. The board noted, however, that it would be difficult to allocate value between portions of an improved parcel.

We include this discussion to indicate the difficulty that could be encountered in trying to apply the three-year averaging rule to the subject parcel, and to support further the conclusion that the board was acting within its authority in relying on the literal language of § 64.

would be assessable in the year of assessment of the tax upon a taxable valuation equal to the average of the taxable valuations *of said parcel* as reduced by reason of abatements . . . for the three years next preceding said year" (emphasis added). St. 1978, c. 580, § 34. Section 64 was amended by St. 1982, c. 653, § 6, to read as it presently does. M.I.T. and Kennedy Lofts also express as a policy concern the risk that the board's view of § 64 will permit assessors to shift boundary lines in order to avoid taxpayers' use of the three-year averaging provision.

The statutory interpretation argument made by M.I.T. and Kennedy Lofts is unconvincing. The term "tax due" used throughout § 64, and in the three-year averaging provision, logically can only refer to the taxation of the new parcel of real estate. A "tax due" cannot be computed without reference to the subject of the tax, which, in § 64, is "a parcel of real estate." To conclude otherwise would be to disregard the statutory context of the term. See *Morrison* v. *Lennett,* 415 Mass. 857, 863 (1993). Further, the 1982 amendment to § 64 was intended to comport with enforcement of one hundred per cent valuation, which followed this court's decision in *Sudbury* v. *Commissioner of Corps. & Taxation,* 366 Mass. 558 (1974). Statute 1982, c. 653, was entitled "An Act providing relief for the impact of revaluation," and by providing for the three-year average calculation to equate with the average of the previous three years' taxes, reflected a legislative judgment that municipalities should be protected from the possible loss of revenues. See *Sebestyen* v. *Assessors of Newton,* 3 Mass. Appellate Tax Bd. Rep. 95, 97-98 (1983) (discussing the history and purpose of the 1982 amendment).[5] The revi-

---

[5]The board stated in this decision that "the requirement [imposed by St. 1982, c. 653, § 6] is to pay an amount equal to the average of the three prior years' taxes." *Sebestyen* v. *Assessors of Newton,* 3 Mass. Appellate Tax Bd. Rep. 95, 98 (1983). As the board noted, under the prior law, "the [taxpayers] would average the last three years' valuations and apply the current year's tax rate. In the face of revaluations [at one hundred per cent], the [taxpayers] would receive a possible windfall." *Id.* at 97. The new requirement "prevents the taxpayer from only paying a very small percentage of the tax levied in order to maintain jurisdiction with the board," a situation which "could cause serious fiscal problems for various cities and towns." *Id.* at 98.

sions to § 64 do not have the significance which M.I.T. and Kennedy Lofts seek to ascribe to them.[6]

Finally, the policy argument made by M.I.T. and Kennedy Lofts is equally weak. The argument was considered by the board, for what it was worth, in the discussion set forth below.[7]

The decision of the board dismissing the appeals filed by M.I.T. and Kennedy Lofts for fiscal years 1991 and 1992 is affirmed.[8]

*So ordered.*

---

[6]M.I.T. and Kennedy Lofts also cite *Altman* v. *Assessors of Randolph*, 372 Mass. 276 (1977), to support their position. That case deals with the application of the three-year averaging provision to a taxpayer who elected the informal procedure to pursue his appeal on a parcel of land on which an office building was erected in the third year of the averaging period. The decision does not deal at all with the question of the application of the three-year averaging provision to reconfigured land.

[7]"[M.I.T. and Kennedy Lofts] present a doomsday argument that if the board dismisses these appeals, there would be nothing to stop assessors from depriving taxpayers of the benefits of the averaging provision by redrawing parcel lines. First, there is no indication that the assessors here have attempted any such scheme. Rather, the assessors have relied on a plan which was drawn and recorded on behalf of [M.I.T. and Kennedy Lofts] to depict the boundaries of the land leased by Kennedy Lofts. Moreover, the redrawing of a new parcel by the assessors was actually to the benefit of [M.I.T. and Kennedy Lofts] since Kennedy Lofts had an obligation to pay the real estate tax on only that part of MIT's property which was conveyed in the ground lease. Absent the creation of a new parcel which corresponded to the parcel conveyed in the ground lease . . . [M.I.T. and Kennedy Lofts] would have had to allocate the tax burden between and among a number of different parcels. Finally, to the extent that the . . . doomsday argument has any validity, it is appropriately raised to the Legislature, and not to this board."

[8]Because we conclude that the board's interpretation of § 64, was correct, we need not reach the question whether the 1990 abatement granted on the original parcel after the board determined that it did not have jurisdiction over the fiscal year 1991 and 1992 appeals should be considered for the purpose of the three-year averaging provision. See, in connection with this point, *Columbia Pontiac Co.* v. *Assessors of Boston*, 395 Mass. 1010, 1010-1011 (1985).